STUCKER, Respondent v. THE TRAVELERS INDEMNITY COMPANY et al., Appellants

(84 N.W.2d 566)

(File No. 9622. Opinion filed August 22, 1957.)

**Davenport, Evans, Hurwitz & Smith,** Sioux Falls, for Defendants and Appellants.

**Vernon Williams, Charles E. Gorsuch,** Aberdeen, for Plaintiff and Respondent.

HANSON, J. This is an action by the owner of an insured automobile to recover a collision loss from the insurers. Plaintiff claimed $4,300 damages. The jury returned a verdict in his favor in the amount of $3,950. The defendant insurers appeal from the judgment entered thereon.

The insurers admit plaintiff's automobile was damaged by collision or upset, as defined in their policy. They contend,

however, his recovery is limited to the reasonable cost of repairing the damaged car.

Both parties agree the contract of insurance governs the measure of recovery rather than any rules of damages applicable to tort actions. The policy provides:

"The limit of the company's liability for loss shall not exceed the actual cash value of the automobile, or if the loss is of a part thereof the actual cash value of such part, at time of loss nor what it would then cost to repair or replace the automobile or such part thereof with other of like kind and quality, with deduction for depreciation, nor the applicable limit of liability stated in the declarations."

The above contract provision creates an express limitation on the insurers' liability in case the damaged vehicle is reparable. Recovery is then limited to the reasonable cost of repairing the automobile or to its actual cash value whichever should be smaller in amount.

■ In the event of loss the policy provides insurer may pay for the loss in money or may repair or replace the automobile, or such damaged part thereof. This option must be exercised by some unequivocal act. The notice of election must be "clear, positive, distinct and unambiguous". Lincoln v. General Casualty Co. of Wisconsin, 243 Iowa 1280, 55 N. W.2d 321, 323.

■ The insurers did not elect to repair or replace the damaged automobile. Instead they elected to pay for the loss in money based on the estimated or probable cost of repairs. Such an election did not deprive them of the policy liability limitations.

The evidence shows the plaintiff, a resident of Aberdeen, purchased a new 1954 Lincoln automobile in August, 1954. Thereafter the car was regularly serviced and kept in excellent condition by the Lincoln garage in Aberdeen. On June 8, 1955 it was considerably damaged in a collision with a house trailer. The accident occurred near Willmar, Minnesota. The speedometer indicated the car had then been driven 14,880 miles. Following the accident the car was taken to a garage in Willmar. It has never been removed or repaired.

The insurers had the damaged car appraised by Clifford Marx, owner and manager of the Minnesota Auto Damage Appraisers. He prepared a detailed list of the damaged parts together with an itemized cost estimate of repair and replacement. According to his appraisal the total cost of repair would amount to $1,427.70 leaving open an unestimated possible damage to the front of the motor and the transmission. The insurers first offered plaintiff $1,427.70 in full settlement of the loss. Plaintiff refused the offer and retained counsel.

The insurers' representatives then contacted the Lincoln garage in Aberdeen. The officials of this garage agreed, without viewing the car, to make the repairs according to the Marx appraisal and their work would be guaranteed. Plaintiff's counsel was so advised. The insurers further offered to pay for the cost of hauling the damaged car from Willmar to Aberdeen; to pay for a new frame instead of straightening the old; and to pay for any hidden damages which might develop. The repairs were to be charged to plaintiff and the garage would look to him for payment. The insurers apparently would reimburse plaintiff.

No unqualified offer to pay for all the repairs necessary to restore plaintiff's car to its former condition was ever made. The plaintiff declined the offers of settlement and this action followed. It was his contention the insurers should either repair the car under their own supervision to his satisfaction or negotiate a cash settlement on the basis of a total loss.

The plaintiff valued his car at $4,300 before the accident and $300 after the collision. Fred Simpson, owner of the Lincoln garage in Aberdeen, testifying for the plaintiff, valued the car at $3,100 to $3,300 before the accident. He did not inspect the damaged car and expressed no opinion as to its value after the accident. Mr. Simpson also testified his garage had agreed to repair plaintiff's car in accordance with the Marx estimate, plus any hidden damage, and the work would be guaranteed. In his opinion it was not practicable to repair a 1954 Lincoln which had been damaged to the extent of having a salvage value of $300 or $400 and after

repair would not have the same market value it had before the accident.

George Schock, service manager of the Lincoln garage in Aberdeen, and Ralph Palmiter, service manager of the Dodge-Plymouth garage, also testified for the plaintiff. Both inspected the car before trial.

According to Mr. Schock the damaged car could be restored to its former mechanical condition by making the repairs according to the Marx estimate plus the repair of any concealed or hidden damage. In his opinion the car would not have the same resale value as the repaint job could be detected. On cross-examination he admitted plaintiff's car had been in prior accident and most of the same damaged surfaces had then been repainted. His valuation of the car after the accident was $350.

Mr. Palmiter testified "there is no automobile that has been damaged that can't be repaired but there is a point where it is no longer practicable to repair". In his opinion the plaintiff's car was "damaged beyond repair" and couldn't possibly be as good a machine as before. His valuation of the car after the accident was $300.

Clifford Marx, testifying for the insurers, estimated the installation of a new frame on the car would bring the total estimated cost of repairing the known damage on plaintiff's car to $1,627.50. According to his testimony the replacement of damaged parts with new parts would result in a car mechanically the same as when it came from the factory. Also, in his opinion, the car would have the same value it had before the accident if it were properly repaired according to his estimate. He valued the car at $3,000 to $3,100 before the accident and $750 to $825 immediately after.

The policy provision limiting the insurers' liability to the cost of repairs applies only where the damaged vehicle can reasonably be repaired. It has no application in case the insured vehicle is damaged beyond repair and cannot thereby be restored to its former condition. Stoops v. First American Fire Ins. Co., 160 Tenn. 239, 22 S.W.2d 1038. In such case, the proper measure of damages is the difference between the fair cash value of the automobile before and after

the accident. Vol. 6, Blashfield's Automobile Law and Practice, Section 3791 p. 468.

■ ■ The burden of proof was on the insurers to show the damaged car could be restored to its former condition by suitable repairs or replacements. Johnson v. Mercantile Ins. Co. of America, 47 N.M. 47, 133 P.2d 708. The evidence in this regard presented a controverted issue of fact.

Under the circumstances the trial court properly instructed the jury, in substance:—That if they believed by a preponderance of the evidence the plaintiff's automobile was damaged to such an extent it was a total loss, except for salvage, then the measure of recovery was the difference in value of said automobile immediately before and immediately after the accident, less its salvage value, and less the $50 deductible under the policy. As an alternative, the jury was instructed that if they believed by a preponderance of the evidence plaintiff's automobile was not damaged to such an extent it was a total loss and by repairs could be placed in substantially the same condition it was in before the accident then the measure of recovery for plaintiff would be such sum as would necessarily be expended in placing said automobile in substantially tthe same condition it was immediately prior to the accident, less the $50 deductible under the policy.

■ ■ The primary duty of reducing or avoiding excessive verdicts rests on the trial judge. "As a participant in the original proceedings the trial court is best qualified to accurately judge the forces that shaped the verdict of the jury and can most readily sense the influence of passion and prejudice in an excessive verdict. For this reason, when such a verdict is set aside by a trial court, an appellate court is reluctant to disturb its ruling. For the same reason, a reviewing court should be equally cautious in dealing with a verdict the trial court has approved." Tufty v. Sioux Transit Co., 70 S.D. 352, 17 N.W.2d 700, 702. As there is competent evidence in the record supporting the verdict which is based on conflicting evidence it is not within our province to disturb it on appeal.

Affirmed.

All the Judges concur.