*Vera W. Huang*, pro se.


SUZANNE ROTH *vs.* AMICA MUTUAL INSURANCE COMPANY. October 7, 2003. *Insurance*, Motor vehicle insurance, Construction of policy. *Motor Vehicle*, Insurance.

We consider on direct appellate review two orders issued in a Superior Court action brought by Suzanne Roth against Amica Mutual Insurance Company (Amica), her automobile insurer. We affirm both orders, and affirm judgment for Amica.

*Background.* Amica issued Roth a standard Massachusetts automobile policy, sixth edition (standard policy), including optional collision coverage (part seven), to insure her 1993 Acura Legend automobile. See *Given* v. *Commerce Ins. Co.*, ante 207, 208-209 (2003) (summarizing relevant policy provisions). In 1996, during the policy period, Roth submitted a claim to Amica for collision damage.[1] One of the parts damaged in the collision was the front fender. When the vehicle was repaired, pursuant to an appraisal by Amica, the damaged fender was replaced with a fender that had been manufactured by someone other than the original equipment manufacturer

---

[1]We acknowledge the brief and supplemental memoranda and appendix filed by Huang prior to argument before this court. These materials request relief in addition to that sought before the single justice. "We do not consider any other issues, arguments, and claims raised by [Huang] on appeal that were not raised before the single justice." *Bloise* v. *Bloise*, 437 Mass. 1010, 1010 (2002).

[1]Roth's vehicle had been driven over 15,000 miles at the time of the accident, thereby meeting a criterion for the use of "rebuilt, aftermarket or used [replacement] part." See 211 Code Mass. Regs. § 133.04 (1) (1996).

(OEM). Roth protested that only a fender from the OEM would satisfy Amica's obligation to repair the vehicle under the language of the standard policy and the applicable regulations. She also contended that, notwithstanding the repair of her vehicle, she had sustained damage in the form of "inherent diminished value," see *id.* at 209, and demanded compensation for that damage.

In July, 1998, Roth, "individually and as a representative of all persons similarly situated," filed a seven-count complaint against Amica, predicated on Amica's specification of allegedly inferior non-OEM parts to repair damaged automobiles and its refusal to pay compensation for inherent diminished value. Amica filed a motion for summary judgment on all counts, which was partially granted in September, 1999. The judge held that, under the plain language of the standard policy, Roth was not entitled to recover inherent diminished value from Amica. Relying on regulations promulgated by the division of insurance (division) and the auto damage appraiser licensing board (board), he further concluded that Amica's specification of non-OEM parts, although not expressly provided for in the standard policy, was not a per se violation of its duty under part seven to repair or replace collision-damaged parts, but that a genuine issue of material fact existed as to the quality of the non-OEM fender Amica had specified for Roth's vehicle. In August, 2000, Amica again filed for summary judgment on the non-OEM parts issue, and a second judge denied that motion. The judge noted in her memorandum and order that the class had not been certified and that, "given the procedural wrangling in this case, certification sooner rather than later may better protect the class members." As of the time of the pretrial conference in May, 2001, no motion for certification had been filed. Trial was set for October 1, 2001. In July, 2001, Roth filed a motion for class certification pursuant to Mass. R. Civ. P. 23, 365 Mass. 767 (1974), which was denied in August, 2001. The judge denied the motion on the grounds that it was untimely and that "during the last three (3) years, Ms. Roth has failed to bring forward one other insured similarly situated" plaintiff affected by Amica's allegedly wrongful specification of non-OEM parts. See Mass. R. Civ. P. 23 (a) and (b). In April, 2002, pursuant to a joint motion, the judge entered judgment for Amica on all counts. Roth appealed from the order of partial summary judgment in favor of Amica and from the denial of her motion for class certification. We granted Amica's application for direct appellate review.

*Discussion.* In *Given* v. *Commerce Ins. Co., supra,* we held that insureds are not entitled to recover for alleged inherent diminished value under part seven of the standard policy. See *id.* at 209-214. There was no error in granting summary judgment in favor of Amica with respect to Roth's claims for inherent diminished value.

We also agree with the judge that Amica's specification of non-OEM parts to repair a damaged automobile is not an automatic violation of its obligations under part seven and the applicable regulations. Roth argued below, as she argues on appeal, that all non-OEM parts are inherently inferior to OEM parts in every circumstance. Her global generalization flies in the face of common sense, common experience, and contrary conclusions reached by the Legislature, the division, and the board. See, e.g., G. L. c. 90, § 34O (requiring notice to insured persons of insurer's or repairer's specification of non-OEM parts); 211 Code Mass. Regs. § 133.04 (1996) (requiring specification of "a rebuilt, aftermarket, or used part of like kind and quality, at the lowest

possible price" to replace damaged part, except in limited enumerated circumstances, and defining "of like kind and quality" to mean "of equal or better condition than the preaccident part"); 212 Code Mass. Regs. § 2.04 (e) (1996) (requiring appraisers to specify repair parts in accordance with 211 Code Mass. Regs. §§ 133.00 [1996]). We decline Roth's invitation to consider this detailed regulatory scheme, which unambiguously allows for use of non-OEM parts, as intended only for some distant future when non-OEM parts may be as good as OEM parts. The Legislature has decided that, in many instances, they already are. In an appropriate case, a plaintiff may successfully claim damages based on an insurer's specification of a substandard non-OEM part, or successfully demonstrate that the insurer's duty under part seven to repair or replace can only be satisfied by the designation of a particular OEM part to repair the specific damage to that automobile — there are certainly some parts of some vehicles where unique dimensions or specifications of the part are such that only a replacement part from the original manufacturer will suffice to restore the vehicle to its proper functioning condition. That is not the case before us.

Finally, the judge acted well within her "broad discretion," *Weld* v. *Glaxo Wellcome Inc.*, 434 Mass. 81, 85 (2001), in denying as untimely Roth's motion for class certification, where the motion was not filed until nearly three years after entry of the complaint, nearly one year after a judge's admonition to file the motion promptly, and less than three months before the scheduled start of trial. Morever, the judge's conclusion that Roth had failed to demonstrate the required numerosity or typicality was amply supported by the record and was not "arbitrary, unreasonable, or capricious." *Id.* See Mass. R. Civ. P. 23 (a).

> *Orders affirmed.*
>
> *Judgment affirmed.*

*John Peter Zavez* (*Noah Rosmarin* with him) for the plaintiff.

*Peter C. Knight* (*Michael J. Racette* with him) for the defendant.

*Stephen D. Zubiago*, for National Association of Independent Insurers & another, amici curiae, submitted a brief.