2005 SD 97

**Patrick CULHANE and Nancy Turbak,
Plaintiffs and Appellees,**

v.

**WESTERN NATIONAL MUTUAL
INSURANCE COMPANY,
Defendant and Appellant.**

No. 23442.

Supreme Court of South Dakota.

Argued May 25, 2005.

Decided Sept. 7, 2005.

Michael Abourezk, Abourezk Law Firm, Rapid City, South Dakota, Nancy J. Turbak, Watertown, South Dakota, Attorneys for plaintiffs and appellees.

James E. Moore of Woods, Fuller, Shultz & Smith, Sioux Falls, South Dakota, Attorneys for defendant and appellant.

ZINTER, Justice.

[¶ 1.] An automobile was involved in a single car accident triggering the collision coverage in a personal automobile policy. The insurer tendered the total cost of repairs. However, the insureds contended that they were also entitled to any diminished market value that existed after the vehicle was physically and mechanically repaired to its former condition. The trial court granted partial summary judgment in favor of the insureds, allowing them to present evidence of post-repair diminished market value. The trial court also permitted the insureds to proceed on a claim alleging bad faith in the denial of coverage for diminished market value. We granted both parties' requests for an intermediate appeal. We hold that, under the policy provision limiting indemnification to the lesser of actual cash value or repair, the insurer's liability for repair did not include diminished market value remaining after the vehicle had been repaired to its former physical, operating, and mechanical condition.

### Facts and Procedural History

[¶ 2.] Western National Mutual Insurance Company issued a personal automobile policy covering Patrick Culhane and Nancy Turbak's 2001 Audi Quattro. On August 22, 2003, the Audi was involved in a one-vehicle accident. Culhane and Turbak (hereinafter collectively referred to as Culhane [1]) submitted a repair estimate of almost $13,000 to Western. Culhane also claimed that after repairs, the Audi would

---

1. Turbak submitted a joint claim stating: "I write on behalf of myself and my husband Pat Culhane, your insureds, regarding our claim for property loss...."

sustain a diminution in market value of $8,000 to $10,000. Culhane demanded that Western pay for the repairs plus the post-repair diminished value. Western denied the diminished value claim but sent Culhane a check for the full cost of repairs, less the deductible.

[¶ 3.] Because Culhane continued to pursue the diminished value claim, Western retained independent local counsel to obtain an opinion concerning its indemnification obligation under the policy. Independent counsel advised Western that the question had not been resolved in South Dakota, but persuasive authority in other jurisdictions justified a denial of Culhane's diminished value claim.

[¶ 4.] Culhane subsequently sued Western for breach of contract and bad faith. Prior to trial, Western moved for summary judgment on all claims. Culhane also moved for partial summary judgment seeking a declaration that Western was required to indemnify for post-repair diminished value and that Western had engaged in bad faith in denying that claim. The trial court granted Culhane's motion, allowing evidence of diminished value and bad faith to be submitted to the jury.[2] The issues on appeal are:

(1) Whether the policy required indemnification for both the cost of repairs and post-repair diminished market value; and

(2) Whether Western acted in bad faith when it denied Culhane's post-repair diminished market value claim.

## Analysis and Decision

[¶ 5.] Our standard of review on summary judgment is well-settled. We affirm the circuit court "when there are no genuine issues of material fact and the legal questions have been correctly decided." *Sanford v. Sanford*, 2005 SD 34, ¶ 11, 694 N.W.2d 283, 287 (citations omitted). The question in this case is legal in nature requiring insurance contract interpretation. We review that question of law de novo with no deference to the trial court. *Auto–Owners Ins. Co. v. Hansen Hous., Inc.*, 2000 SD 13, ¶ 10, 604 N.W.2d 504, 509 (citations omitted).

### Post–Repair Diminished Market Value

[¶ 6.] The policy's "limitation of liability" provision is central to this dispute. It contractually limits the portion of the loss that the insurer must indemnify. It provides:

Our limit of liability for loss will be the lesser of the:

1. Actual cash value of the stolen or damaged property; or

2. Amount necessary to repair or replace the property with other property of like kind and quality.

### I

[¶ 7.] On two prior occasions, this Court has considered related questions under similar policy language limiting an insurer's liability to the lesser of cash value

---

2. The trial court's decision to leave the diminished market value claim for the jury appears to be based on two prior decisions of this Court leaving loss of value or repair questions for the jury. However, the prior disputes were submitted to the jury because there were factual questions whether repairs would have restored the damaged property to its prior physical condition. *See Stucker v. Travelers Indem. Co.*, 77 S.D. 27, 84 N.W.2d 566 (1957);

*Grubbs v. Foremost Ins. Co.*, 82 S.D. 98, 141 N.W.2d 777 (1966). Here, there is no dispute that the automobile can be restored to its former physical, operating, and mechanical condition. The question is whether there is an obligation, as a matter of law, to indemnify for diminished market value after property has been physically restored. This is not a question for the jury.

or repair. *See Stucker v. Travelers Indem. Co.,* 77 S.D. 27, 84 N.W.2d 566 (1957) and *Grubbs v. Foremost Ins. Co.,* 82 S.D. 98, 141 N.W.2d 777 (1966). Because of the analogous limitation of liability language, Culhane strenuously argues that these decisions clearly establish that recoverable first-party collision loss includes the cost of repairs plus post-repair loss of market value.

[¶ 8.] We disagree. *Stucker* only held that an insurer's liability may be limited to the cost of repairs, but the repair limitation does *not apply* when the property cannot be restored to its former condition.

> The policy provision limiting the insurers' liability to the cost of repairs applies only where the damaged vehicle can reasonably be repaired. It has no application in case the insured vehicle is damaged beyond repair and cannot thereby be restored to its former condition.

*Stucker,* 77 S.D. at 31, 84 N.W.2d at 569 (citation omitted). Similarly, *Grubbs,* in reaffirming the cost of repair limitation, held that the insured's "recovery was limited to the cost of repair or replacement only if that restored the property to substantially its prior condition." 82 S.D. at 102, 141 N.W.2d at 778–79.

[¶ 9.] Culhane, however, points out that the jury verdict affirmed in *Stucker* exceeded the cost of repairs. Culhane further asserts that both parties in *Stucker* had agreed that the vehicle could be restored to its former condition in all respects other than value. Because the *Stucker* jury instructions limited damages to the cost of repair if the vehicle could have been placed in substantially the same condition, Culhane argues that the *Stucker* affirmance of a verdict exceeding the cost of repair essentially approved post-repair loss of market "value" as a part of the cost of "repair."

[¶ 10.] However, the premise of Culhane's argument is incorrect because the witnesses in *Stucker* did not agree that the car could be repaired to its former condition in all respects other than value. The service manager for one garage testified that the car was " 'damaged beyond repair' and couldn't possibly be as good a machine as before," while another witness testified that "the replacement of damaged parts with new parts would result in a car mechanically the same as when it came from the factory." *Stucker,* 77 S.D. at 31, 84 N.W.2d at 569. Considering this dispute, this Court noted that the issue was *whether* the car "*could be* restored to its former condition by suitable repairs or replacements." *Id.* at 32, 84 N.W.2d at 569 (emphasis added) (citation omitted). Consequently, this Court affirmed the jury award exceeding the cost of repairs only because of this conflicting evidence that would have allowed the jury to award damages for lost value if it found that the vehicle could not be reasonably repaired. *Stucker* did not, however, expressly or impliedly hold that the policy language, limiting indemnification to "repair," also *required* indemnification for post-repair diminished market value.

[¶ 11.] If anything, *Stucker's* dicta foreshadowed the opposite conclusion: a conclusion that has been reached by virtually all recent decisions on this question.[3] *Stucker* noted that when a vehicle is repairable, this type of policy language limits recovery to *alternatives:* the reasonable cost of repairs *or* lost value, but not both. This Court stated:

> The . . . contract provision creates an express limitation on the insurers' liability in case the damaged vehicle is repara-

---

3. *See infra* ¶ 28 n. 12.

ble. Recovery is then limited to the reasonable cost of repairing the automobile or to its actual cash value whichever should be smaller in amount.

*Id.* at 29, 84 N.W.2d at 568.

[¶ 12.] *Grubbs,* decided nine years later, confirmed that this type of policy provision limits the loss recovery to the lesser of lost value *or* repair of the property. *Grubbs* involved a mobile home that was damaged by hail. The insurance policy contained a similar repair or lost value limitation. Again, this Court did not adopt Culhane's position that "repairs" include a component of post-repair lost market value. Instead, without any mention of lost value, *Grubbs* confirmed that cost of repair is an *alternative* that only requires restoration of the *property.* This Court stated:

> The words 'repair' and 'replace' used in a policy of insurance mean the *restoration* of the insured *property* to substantially the same condition in which it was immediately prior to the damage.

*Grubbs,* 82 S.D. at 101, 141 N.W.2d at 778 (emphasis added).

[¶ 13.] Culhane, however, relies on other language in *Grubbs* to suggest that "repairs" include post-repair loss of value. Culhane points out that in affirming a verdict ($1,200) that exceeded the cost of repairs, this Court stated:

> The jury could find the value of the trailer before the hail storm was $2,400 or $3,000; that *after the repairs were made* it would be worth $1,650 or $1,700, and the repairs mentioned would not, as the court instructed, 'fairly compensate him for the damage.'

*Id.* at 102, 141 N.W.2d at 779 (emphasis added). However, Culhane's reliance on this reference to lost value "after the re-

pairs were made" takes the reference out of context and, most importantly, fails to consider the trial court's instructions. When considered in context with the approved jury instructions, it is clearly apparent that the language was not intended to allow the cost of repairs plus post-repair diminished value. The trial court's instructions, approved by this Court, specifically provided:

> In determining the amount of damage sustained by the plaintiff you may award the *lesser* amount of two sums of money to be arrived at as follows:
>
> "The first is the sum which you determine to be the reasonable expense of making the necessary repair to the property.
>
> The second sum is the difference between the fair market value of the property immediately before the storm and the fair market value *of the unrepaired* property immediately after the storm."

*Id.* at 100, 141 N.W.2d at 778 (emphasis added). Thus, the law of the case only permitted an award of lost value of *unrepaired* property, and we view the language at issue as nothing more than a possible jury conclusion should the jury have found that the attempted repairs had not restored the mobile home's *physical* condition.

[¶ 14.] Consequently, when viewed in context, our cases have not held that this type of policy limitation requires indemnification for the cost of repairs plus post-repair lost value. Instead, our decisions have, like almost all of the recent decisions on this subject, enforced the policy limitation as written and limited recovery to the lesser of the cost of repairs or lost value, but not both.[4]

---

**4.** We are not the only court that disagrees with Culhane's contrary reading of our cases. Other courts also read *Stucker* and *Grubbs* to

hold that this type of policy limitation does not permit loss recovery for repair plus post-repair diminished value. *See Siegle v. Pro-*

## II

[¶ 15.] The trial court considered these decisions but offered three reasons for allowing post-repair diminished value. The trial court reasoned that: (1) "[a] reasonable person could read [Culhane's] insurance policy and believe that when submitting a claim they would recover an amount equal to what it would require to restore their vehicle to its pre-accident value;" (2) "[t]he election of the repair choice works in the economic favor of the insurer and forces the insured to bear the significant loss in market value despite insuring the vehicle against loss," which "offends the principle of mutuality and unjustly places the burden of bearing the actual loss on the insured;" and (3) "[a] genuine issue of material fact exists as to the meaning of the term restore a vehicle to its 'former condition.' "

[¶ 16.] We address this reasoning in turn. First, we disagree with the trial court's use of reasonable expectations because "this Court has repeatedly declined to adopt [that] doctrine." *See Dakota, Minn. & E. R.R. Corp. v. Heritage Mut. Ins. Co.*, 2002 SD 7, ¶ 37, 639 N.W.2d 513, 519 (quoting *SDCP v. Wausau Underwriters Ins. Co.*, 2000 SD 116, ¶ 24 n. 5, 616 N.W.2d 397, 407 n. 5). Moreover, because we ultimately conclude that the policy is not ambiguous, Culhane's reasonable expectations are irrelevant. "The doctrine of reasonable expectations simply does not apply to [insurance] policy language [where it is unambiguous]." *Id.*, ¶ 39. Finally, even if the doctrine of reasonable expectations were helpful in interpreting the meaning of "repair or replace," the doctrine is of no avail here because Culhane's expectation concerning the meaning of "repair or replace" is objectively unrea-

sonable. As the Massachusetts Supreme Court explained:

Seeking to evade the clear import of this cap on [the insurer's] liability, [the insured] contends that the concept of inherent diminished value is included within the term "repair or replace the damaged property," in the sense that the vehicle has not been fully "repair[ed]" or "replace[d]" when it still suffers some diminution in value even following full physical restoration. We will not torture the plain meaning of the terms "repair" and "replace" to encompass "repair" or "replace[ment]" of damage caused by stigma, a form of damage that, by definition, defies remedy by way of "repair" or "replace[ment]." There is nothing exotic about the words "repair or replace" as used in the standard policy—both words, in their ordinary usage, refer to the remedying of tangible, physical damage. See Websters Third New Intl Dictionary 1923 (1993) (defining "repair" as "to restore by replacing a part or putting together what is torn or broken"); *id.* at 1925 (defining "replace" as "to place again: restore to a former place, position, or condition"). No "objectively reasonable insured, reading the relevant policy language" would conclude that these terms include compensation for diminution in market value or for anything else beyond restoration of the vehicle's precollision physical condition.

*Given v. Commerce Ins. Co.*, 440 Mass. 207, 212-13, 796 N.E.2d 1275, 1279–80 (2003) (citation omitted). *See also Hall v. Acadia Ins. Co.*, 801 A.2d 993, 995–96 (Me. 2002) (concluding that the insurance "policy's use of the term 'repair' is unambigu-

---

*gressive Consumers Ins. Co.*, 819 So.2d 732, 738 n. 4 (Fla 2002); *Black v. State Farm Mut.*

*Auto. Ins. Co.*, 101 S.W.3d 427, 428–29 (Tenn. Ct.App.2002).

ous and that [the insurer's] liability for a loss under the policy extends only to the loss that can be repaired as that term is commonly understood. Because diminution in value is a loss that cannot be repaired, an ordinary person would reasonably conclude that a claim for diminished value is not covered by the policy"); *Siegle v. Progressive Consumers Ins. Co.,* 788 So.2d 355, 360 (Fla.Dist.Ct.App.2001) (stating that "a return to market value is not what the words 'repair' [and] with 'like kind and quality' commonly connote and is not what an ordinary insured would reasonably understand the phrase to mean").

■ [¶ 17.] With regard to the trial court's second reason, we note that although not specifically rejected by this Court, the doctrine of mutuality has been generally abandoned. *See Given,* 796 N.E.2d at 1278 n. 4. *See also* 2 *Corbin on Contracts* § 6.1, at 197 (rev ed 1995); 3 *Williston on Contracts* § 7:14 (4th ed 1992); *Restatement (Second) of Contracts* § 79 (1981). Thus, we also find this reasoning unpersuasive.

[¶ 18.] Finally, with respect to the trial court's third reason, we disagree that the *meaning* of the language "former condition" was a question of fact for a jury. The *meaning* of this language, which is a court's interpretation of the contract, is a question of law for the court. *See Prunty Const., Inc. v. City of Canistota,* 2004 SD 78, ¶ 10, 682 N.W.2d 749, 753; *Yarcheski v. Reiner,* 2003 SD 108, ¶ 24, 669 N.W.2d 487, 495; *Roth v. Roth,* 1997 SD 75, ¶ 16, 565 N.W.2d 782, 786. Therefore, we disagree with the trial court's reasons for allowing a jury to consider indemnification for the cost of repairs plus indemnification for post-repair loss of value.

### III

■ [¶ 19.] We believe this issue is governed by the plain meaning of the policy language. In examining policy language, we first restate that:

> Where the provisions of an insurance policy are fairly susceptible of different interpretations, the interpretation most favorable to the insured should be adopted. This rule of liberal construction in favor of the insured and strictly against the insurer applies only where the language of the insurance contract is ambiguous and susceptible of more than one interpretation.... This rule does not mean, however, that the court may seek out a strained or unusual meaning for the benefit of the insured.

*National Sun Indus., Inc. v. South Dakota Farm Bureau Ins. Co.,* 1999 SD 63, ¶ 18, 596 N.W.2d 45, 48–49 (citation omitted). Instead, we consider the policy "according to the natural and obvious import of the language, without resorting to subtle and forced construction for the purpose of either limiting or extending [its] operation." *State Farm Mut. Auto. Ins. Co. v. Vostad,* 520 N.W.2d 273, 275 (S.D.1994) (citations omitted). We also consider the provisions as a whole. *Nelson v. Farmers Mut. Ins. Co. of Neb.,* 2004 SD 86, ¶ 11, 684 N.W.2d 74, 77 (citation omitted).

[¶ 20.] Here, there are a number of relevant policy provisions. They include:

INSURING AGREEMENT

A. We will pay for direct and accidental loss to "your covered auto" or any "non-owned auto", including their equipment, minus any applicable deductible shown in the declarations.

. . .

LIMIT OF LIABILITY

A. Our limit of liability for loss will be the lesser of the:

  1. Actual cash value of the stolen or damaged property; or

2. Amount necessary to repair or replace the property with other property of like kind and quality.

B. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss.

C. If repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

. . .

PAYMENT OF LOSS

We may pay for loss in money or repair or replace the damaged or stolen property.

[¶ 21.] Obviously, this dispute focuses primarily on the "Limit of Liability" provision that limits Western's contractual obligation to pay the *lesser* of actual cash value of the vehicle *or* the amount necessary to repair or replace with other property of a like kind and quality. Culhane argues that because repair or replacement must be with other property of *a like kind and quality,* the language is broad enough to include repair plus diminished value. Culhane contends that this language is "fairly susceptible" to different interpretations and "the interpretation most favorable to the insured" must be adopted. *See Roden v. General Cas. Co. of Wis.,* 2003 SD 130, ¶ 10, 671 N.W.2d 622, 625. However, in *Roden,* we stated that a policy is not ambiguous simply because the parties disagree about its meaning. Rather, "[a]mbiguity in an insurance policy is determined with reference to the policy as a whole and the plain meaning and effect of its words." *Id.* (citation omitted). *See also Johnson v. Johnson,* 291 N.W.2d 776, 778–79 (S.D. 1980) (stating that a policy is not ambiguous simply because parties differ about the interpretation).

[¶ 22.] In this case, we see no ambiguity. This Court concluded long ago that unless the property cannot be repaired, an insurer's contractual liability is limited to the cost of repairs. *Grubbs,* 82 S.D. at 102, 141 N.W.2d at 778–79; *Stucker,* 77 S.D. at 32, 84 N.W.2d at 569. This Court was also unequivocal in stating that the two measures of damage (lost value or repair) are *alternatives* and the insurer is only obligated to pay the *lesser* of the two. *Id.* Furthermore, our cases have avoided the use of the word value when talking about the repair alternative. On the contrary, we have noted that repair contemplates *restoration* of the *condition* of the *property. See Stucker,* 77 S.D. at 31, 84 N.W.2d at 569; *Grubbs,* 82 S.D. at 101, 141 N.W.2d at 778. Finally, in discussing restoration of the condition of the property, this Court has rejected the notion that the repair option requires restoration to the same condition. Rather, this Court noted that the repair limitation applies when the vehicle can be restored to "substantially the same condition." *Stucker,* 77 S.D. at 32, 84 N.W.2d at 569; *Grubbs,* 82 S.D. at 102, 141 N.W.2d at 778–79.

[¶ 23.] Today, we further observe that alternative (2) of the "Limit of Liability" provision specifically uses the language "repair or replacement" with other "property," while only alternative (1) speaks of loss of "value." This use of different language in the two alternative subsections strongly suggests that each alternative contemplates a different limit of liability. Thus, the use of the word "value" in subsection (1) and the use of the word "property" in subsection (2) clearly suggest that lost value was contemplated in the first alternative but not the second. We also observe that the "Payment of Loss" provision gives the insurer the exclusive option to pay any "loss in money or repair or replace the damaged or stolen property." Therefore, requiring repair of the property plus indemnification in money for dimin-

ished value extinguishes the insurer's contractual right contained in both of these provisions. As the Texas Supreme Court explained:

> Interpreting the policy's "repair or replace" language to include diminished value, as [the insured] urges, would render other provisions of the policy meaningless. The policy provides that the insured is entitled to "the lesser of" actual cash value or the amount necessary to repair or replace the vehicle. To incorporate diminished value into the "repair or replace" provision would render the "lesser of" language meaningless. The insurer's obligation to compensate the loss would be cumulative—repair or replace *and* pay diminished value—in effect insuring the vehicle's "actual cash value" in every instance and undermining the insurer's right under the policy to choose a course of action. *See Pritchett*, 834 So.2d at 791–92 (holding that insurer's option to pay the vehicle's full value or make repairs would be meaningless if the policy were read to cover diminished value); *Siegle*, 819 So.2d at 739 (same); *O'Brien*, 785 A.2d at 287 (same). It may be true, as [the insured] contends, that in some instances—say, when a very expensive car is damaged—an insurer will spend less money if it elects to repair and pay diminished value damages rather than declare the car a total loss and pay its actual cash value. But requiring an insurer, who elects repair, to additionally pay cash for the market's diminished perception incorporates an intangible value element into the repair provision that simply does not appear in the policy's language.

Inserting the concept of diminished value into the repair provision would similarly render the policy's "Payment of Loss" section meaningless. Under this section of the policy, the insurer has an option to pay the insured in "money *or* repair *or* replace[ment]." (emphasis added). Including diminished value in the concept of repair would force an insurer that chooses to compensate a loss by exercising the repair option to also pay money, ignoring the clause's disjunctive language.

*American Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 159–60 (Tex.2003). We find this analysis persuasive because when this Court examined a similar payment of loss provision, we noted that under it, repair was limited to replacing physical parts: an "insurer may pay for the loss in money or may repair or replace the automobile, or such damaged part thereof." *Stucker*, 77 S.D. at 29, 84 N.W.2d at 568. Thus, if the policy provisions are to be given effect, the indemnification obligation may be satisfied solely through repair or replacement of the property or parts, and the policy does not contemplate repair or replacement of parts plus an additional payment of money for unrepairable diminished value.[5]

[¶ 24.] Instead, "[t]he plain meaning of [the insurer's] obligation ... is to restore the vehicle, either through repair or replacement, to the same physical and operating condition it was in before the damage occurred." *Schaefer*, 124 S.W.3d at 159. That conclusion is required because the ordinary meaning of the words "repair" and "replace" indicate something physical and tangible.

[W]hether or not intrinsic value generally inheres in the word "quality," and

---

**5.** We acknowledge Culhane's point that Western tendered money (a check) for the cost of repair and, therefore, elected to pay in money. That *act* does not, however, define the *meaning* of the policy language "repair or replace."

assuming without deciding that the phrase "of like kind and quality" modifies both "repair" and "replace," we must look to the ordinary meaning of the words that are modified. We have said that the words "repair" and "replace," with regard to a vehicle, connote something tangible, like removing dents, fixing parts, or replacing the vehicle with a comparable substitute. Thus, if an insurer elects to repair a vehicle and must replace parts in doing so, it must use parts "of like kind and quality." Likewise, if an insurer elects to replace the vehicle, it must do so with a vehicle "of like kind and quality."

*Id.* at 160 (citation omitted). However, post-repair diminution in market value is excluded by "repair or replace" language:

[W]here an insurer has fully, completely, and adequately "repaired or replaced the property with other of like kind and quality," any reduction in market value of the vehicle due to factors that are not subject to repair or replacement cannot be deemed a component part of the cost of repair or replacement. Under the "repair or replace" provision of the policy's limit of liability, the insurer's liability is capped at the cost of returning the damaged vehicle to substantially the same physical, operating, and mechanical condition as existed immediately before the loss. This obligation does not include liability for any inherent diminished value caused by conditions or defects that are not subject to repair or replacement, such as a stigma on resale resulting from "market psychology" that a vehicle that has been damaged and repaired is worth less than a similar one that has never been damaged. While the insured may well suffer this type of damage as a result of a direct or accidental loss, the plain language of the policy clearly and unambiguously limits the insurer's liability to "the amount necessary to repair or replace the property with other of like kind and quality." If the market value of the vehicle, after full, adequate, and complete repair or replacement, is diminished as a result of factors that are not subject to "repair" or "replacement," the insurer has no obligation to pay the diminution in value. No other reasonable interpretation can be given to the parties' express agreement that the insurer's liability is capped at the amount necessary to "repair or replace."

*Carlton v. Trinity Universal Ins. Co.,* 32 S.W.3d 454, 465 (Tex.App.2000).

## IV

[¶ 25.] Although this is nearly the unanimous view of the multitude of courts that have considered this issue in the last five years, Culhane argues that we should adopt a contrary view. To support his argument, Culhane points out that "the obvious purpose of a contract providing collision coverage is to protect insureds and their lenders from property losses caused by the peril insured against—collision." From this, Culhane argues that the value of the vehicle is what is being insured, not just its physical condition and mechanical function. Culhane further argues that it is irrational for an insurance company to protect only against the part of a loss that is represented by the cost of repairs and to ignore other significant losses.

[¶ 26.] While one may debate whether it is rational to only insure part of a loss, that debate is irrelevant because Western's indemnification obligation is governed by the terms of its contract. Stated in other words, the *contractual* indemnification obligation is not governed by Culhane's post-loss feeling of what should be reasonably or rationally covered. Fur-

thermore, Culhane's entitlement to recovery for the "entire loss" is only applicable under the "[r]ules ... [of] recovery in tort[, but those rules] do not apply to an action on a contract of insurance." *Campbell v. Markel Am. Ins. Co.*, 822 So.2d 617, 622–23 (La.Ct.App.2001). Because this is a contract of insurance, "we do not consider what measure of recovery would make the insured whole after a loss or what would be fair and reasonable compensation for the loss ... sustained, for we are not deciding a tort claim." *Carlton*, 32 S.W.3d at 464. We do not consider the rules of recovery in tort because:

> Allowing damages for diminution in value, when such damages are established, fulfills the tortfeasor's obligation to "make whole" his victim.

> In contrast, the obligation between [the insurer] and the [insured] is contractual. [The insurer's] obligation to indemnify [the insured] when a first-party claim is submitted due to a collision is limited by the terms of the contract. It is not governed by tort principles. Bootstrapping the standards for measuring damages when property is damaged through the fault of another to the contractual coverage provided by an insurer for first-party collision claims would result in a new contract, one enlarged beyond what is reasonably contemplated by the clear terms set forth therein, and would ignore the principle that insurance companies may limit coverage so long as

such limitations do not conflict with statutory provisions or public policy.[6]

*Townsend v. State Farm Mut. Auto. Ins. Co.*, 793 So.2d 473, 479–80 (La.Ct.App. 2001).

[¶ 27.] Thus, the question is not whether the entire loss should be rationally indemnified, but rather, what is the extent of the loss that is covered under the insurance contract. And, with respect to that question, virtually all modern decisions conclude that the entire loss is not indemnified.

> [R]equiring an insurer, who elects repair, to additionally pay cash for the market's diminished perception incorporates an intangible value element into the repair provision that simply does not appear in the policy's language.

> · · ·

> We acknowledge that [the insured's] repaired vehicle may command a smaller sum in the market than a like vehicle that has never been damaged, and that awarding [the insured] diminished value in addition to repair would go further to make him whole. But we may neither rewrite the parties' contract nor add to its language.[7]

*Schaefer*, 124 S.W.3d at 160–62.

### V

[¶ 28.] Notwithstanding this recent, almost unanimous view on this issue, Culhane points out that some jurisdictions have interpreted repair to include a com-

---

6. The South Dakota Legislature has been actively involved in mandated insurance coverage. Considering the absence of a statute mandating coverage for repair plus loss of value, the question of mandated coverage is for the legislature.

7. For these reasons, this decision has no effect on the damages one may receive from a tortfeasor or a tortfeasor's insurance carrier.

That recovery is governed by SDCL 21–3–1, which provides:

> For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate for *all the detriment* proximately caused thereby, whether it could have been anticipated or not.

SDCL 21–3–1 (2005) (emphasis added).

ponent of lost value.[8] Culhane specifically points to *Stoops v. First Am. Fire Ins. Co.*, 160 Tenn. 239, 22 S.W.2d 1038, 1040 (1930), a case we cited in *Stucker*,[9] which stated:

[T]he cost of repairs and replacement ... is not the full measure of the insurance to which appellee is entitled, unless

such repairs and replacements will restore the value possessed by the automobile at the date of the accident.

Western acknowledges this authority but points out that the vast majority of courts addressing this issue have rejected Culhane's position.[10] In fact, six of the seven

---

**8.** Although Culhane relies upon ten cases that have found coverage for post-repair loss of value, most of these decisions are either dated or readily distinguishable. For example, in *Southern Farm Bureau Cas. Ins. Co. v. Gaither*, 238 Ark. 50, 51, 378 S.W.2d 211, 211 (1964), a repair estimate was tendered, but "subsequently additional damage to the truck was discovered, consisting of a bent frame, and two badly cut tires, which were not included in the ... estimate," and therefore, it was a jury question *whether the offer of repair was sufficient.* In *Hyden v. Farmers Ins. Exch.*, 20 P.3d 1222, 1225 (Colo.Ct.App.2000), the court ordered repair plus diminished market value, which together *exceeded* the total cash value of the vehicle before the accident. Thus, this decision has been rejected, distinguished, or not followed by virtually all jurisdictions that have analyzed it. In *State Farm Mut. Auto. Ins. Co. v. Mabry*, 274 Ga. 498, 508, 556 S.E.2d 114, 122 (2001), the Georgia Supreme Court found coverage only because it "has stood for 75 years in Georgia and has become, therefore, part of the agreement between the parties when they enter into a contract of insurance which includes the promise to pay for the insured's loss." In *Venable v. Import Volkswagen, Inc.*, 214 Kan. 43, 519 P.2d 667 (1974), the repairs were not satisfactory, and there were numerous remaining problems. Thus, *Venable* only stands for the proposition that "[a]s a measure of damages where repair fails to restore the property, the value of the vehicle immediately before the damage less the value immediately after repairs are made, plus the reasonable cost of the repairs may be applied." *Id.* at 673. In *Potomac Ins. Co. v. Wilkinson*, 213 Miss. 520, 529–30, 57 So.2d 158, 160 (1952), the court allowed diminished value but did not acknowledge the policy limitation at issue here. In *Ciresi v. Globe & Rutgers Fire Ins. Co.*, 187 Minn. 145, 244 N.W. 688 (1932), and *Edwards v. Maryland Motorcar Ins. Co.*, 204 A.D. 174, 197 N.Y.S. 460 (1922), the cases involved automobiles that were stolen and later recovered, but that had been driven several thou-

sand miles while in the possession of thieves. In *Senter v. Tennessee Farmers Mut. Ins. Co.*, 702 S.W.2d 175 (Tenn.Ct.App.1985), the court did not disclose the language used in the insurance policy. And finally, *Allgood v. Meridian Sec. Ins. Co.*, 807 N.E.2d 131 (Ind.Ct. App.2004), has been vacated and is no longer good authority. *See Allgood v. Meridian Sec. Ins. Co.*, 812 N.E.2d 1065 (Ind.Ct.App.2004). As such, only one of the ten decisions cited by Culhane is even arguable authority for coverage of post-repair diminished value. *See Dunmire Motor Co. v. Oregon Mut. Fire Ins. Co.*, 166 Or. 690, 700, 114 P.2d 1005, 1009 (1941) (holding that "[i]t can not be said that there has been a complete restoration of the property unless it can be said that there has been no diminution of value after repair of the car").

**9.** Although Culhane suggests our prior citation to *Stoops* indicates that we have adopted the diminished value rule of Tennessee, his suggestion is misplaced. In citing to *Stoops*, this Court only noted that *when the vehicle cannot be reasonably repaired,* "the proper measure of damages is the difference between the fair cash value of the automobile before and after the accident." *Stucker*, 77 S.D. at 31–32, 84 N.W.2d at 569 (citation omitted). Moreover, *Stoops* arrived at its conclusion only because it found that policy language ambiguous. 22 S.W.2d at 1039. Here, as we point out, the repair language of Western's policy is not ambiguous.

**10.** Western relies on eighteen cases that preclude coverage for post-repair diminution in value:

*Pritchett v. State Farm Mut. Auto. Ins. Co.*, 834 So.2d 785 (Ala.Civ.App.2002); *Johnson v. State Farm Mut. Auto. Ins. Co.*, 157 Ariz. 1, 754 P.2d 330 (Ct.App.1988); *Ray v. Farmers Ins. Exch.*, 200 Cal.App.3d 1411, 246 Cal.Rptr. 593 (1988); *O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281 (Del. 2001); *Siegle v. Progressive Consumers Ins. Co.*, 819 So.2d 732 (Fla.2002); *General Ac-*

state supreme courts that have considered this issue in the last five years have all rejected Culhane's identical argument.[11] And, during this same time period, four-teen courts (including the state supreme courts just mentioned) have issued twenty-four decisions disallowing claims for post-repair diminished value, while only two states have found coverage.[12]

cident Fire & Life Assurance Corp. v. Judd, 400 S.W.2d 685 (Ky.1966); Campbell v. Markel Am. Ins. Co., 822 So.2d 617 (La.Ct. App.2001); Townsend v. State Farm Mut. Auto. Ins. Co., 793 So.2d 473 (La.Ct.App. 2001); Hall v. Acadia Ins. Co., 801 A.2d 993 (Me.2002); Given v. Commerce Ins. Co., 440 Mass. 207, 796 N.E.2d 1275 (2003); Driscoll v. State Farm Mut. Auto. Ins. Co., 227 FSupp2d 696 (E.D.Mich.2002); Lupo v. Shelter Mut. Ins. Co., 70 S.W.3d 16 (Mo.Ct. App.2002); Schulmeyer v. State Farm Fire and Cas. Co., 353 S.C. 491, 579 S.E.2d 132 (2003); Black v. State Farm Mut. Auto. Ins. Co., 101 S.W.3d 427 (Tenn.Ct.App.2002); American Mfrs. Mut. Ins. Co. v. Schaefer, 124 S.W.3d 154 (Tex.2003); Bickel v. Nationwide Mut. Ins. Co., 206 Va. 419, 143 S.E.2d 903 (1965); Wildin v. American Family Mut. Ins. Co., 249 Wis.2d 477, 638 N.W.2d 87 (Ct.App.2001); Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720 (5thCir.2002).

11. See O'Brien v. Progressive N. Ins. Co., 785 A.2d 281, 290 (Del.2001) (stating that an insurer's responsibility to "repair or replace" does not include an obligation to pay for "diminution in value resulting from a 'market psychology'" nor "from the minute physical imperfections that are inherent to repair, so long as repairs have . . . returned [the vehicle] to substantially the same form as before the accident"); Siegle v. Progressive Consumers Ins. Co., 819 So.2d 732, 736, 738 (Fla.2002) (concluding that, under policy language stating the lesser of "actual cash value" or "the amount necessary to repair or replace the property with other of the like kind and quality," the contract terms were not ambiguous and, therefore, coverage for diminished value was denied); Hall v. Acadia Ins. Co., 801 A.2d 993, 995–96 (Me.2002) (concluding that the insurance "policy's use of the term 'repair' is unambiguous and that [the insurer's] liability for a loss under the policy extends only to the loss that can be repaired as that term is commonly understood. Because diminution in value is a loss that cannot be repaired, an ordinary person would reasonably conclude that a claim for diminished value is not covered by the policy"); Given v. Commerce Ins.

Co., 440 Mass. 207, 212–13, 796 N.E.2d 1275, 1280 (2003) (stating that the terms "repair" or "replace" do not encompass "damage caused by stigma, a form of damage that, by definition, defies remedy by way of 'repair' or 'replace[ment]'" and finding that repair or replace, "in their ordinary usage, refer to the remedying of tangible, physical damage"); Schulmeyer v. State Farm Fire & Cas. Co., 353 S.C. 491, 498, 579 S.E.2d 132, 135–36 (2003) (holding that coverage is "expressly limit[ed] . . . to the lesser of the actual value or the cost of repair. These are alternatives, which do not include an additional obligation to pay for diminished value when the cost of repair is chosen."); American Mfrs. Mut. Ins. Co. v. Schaefer, 124 S.W.3d 154, 158 (Tex.2003) (concluding that because the limit of liability section limits the insurer's liability to either "actual cash value" or the amount needed to "repair or replace," whichever is less, the ordinary and generally accepted meaning of those words does not require the insurer to compensate the insured for diminished value).

The only contrary decision is State Farm Mut. Auto. Ins. Co. v. Mabry, 274 Ga. 498, 508, 556 S.E.2d 114, 122 (2001) (finding coverage for diminished value only because that interpretation has stood for 75 years in Georgia and, thus, has become "part of the agreement between the parties when they enter into a contract of insurance which includes the promise to pay for the insureds' loss").

12. The twenty-four decisions denying coverage are:

Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720 (5thCir.2002) (applying Louisiana law); Pritchett v. State Farm Mut. Auto. Ins. Co., 834 So.2d 785 (Ala.Civ.App. 2002); O'Brien v. Progressive N. Ins. Co., 785 A.2d 281 (Del.2001); Siegle v. Progressive Consumers Ins. Co., 819 So.2d 732 (Fla. 2002); Rezevskis v. Aries Ins. Co., 784 So.2d 472 (Fla.Dist.Ct.App.2001); Smith v. Superior Ins. Co., 802 So.2d 424 (Fla.Dist.Ct. App.2001); Campbell v. Markel American Ins. Co., 822 So.2d 617 (La.Ct.App.2001); Farmers Seafood Co., Inc. v. Progressive Sec. Ins. Co., 799 So.2d 866 (La.Ct.App.2001);

[¶ 29.] Culhane attempts to distinguish some of the no-coverage cases by arguing that different policy language was at issue. This argument is without merit. For example, in *Given,* 796 N.E.2d at 1277, the Massachusetts policy did have unique language. However, the court's analysis focused on an analogous limit of liability provision, which provided that the insurer was never required to "pay more than what it would cost to repair or replace the damaged property." *Id.* Similarly, the policy language considered in *Pritchett,* 834 So.2d at 787 and *Townsend,* 793 So.2d at 478 did contain language providing for estimates based on prevailing competitive prices for determining the cost of repair or replacement. Nevertheless, the holding of these courts was based on the meaning of the word "repair." *See Townsend,* 793 So.2d at 478 (concluding that the "provision limits [the insurer's] liability for loss to the lower of either the actual cash value of the automobile or the cost of repair or replacement of the automobile"); *Pritchett,* 834 So.2d at 795 (concluding that under

*Johnson v. Illinois Nat'l Ins. Co.,* 818 So.2d 100 (La.Ct.App.2001); *Townsend v. State Farm Mut. Auto. Ins. Co.,* 793 So.2d 473 (La.Ct.App.2001); *Hall v. Acadia Ins. Co.,* 801 A.2d 993 (Me.2002); *Given v. Commerce Ins. Co.,* 440 Mass. 207, 796 N.E.2d 1275 (2003); *Roth v. Amica Mut. Ins. Co.,* 440 Mass. 1013, 796 N.E.2d 1281 (2003); *Lupo v. Shelter Mut. Ins. Co.,* 70 S.W.3d 16 (Mo.Ct.App.2002); *Camden v. State Farm Mut. Auto. Ins. Co.,* 66 S.W.3d 78 (Mo.Ct.App.2001); *Spellman v. Sentry Ins.,* 66 S.W.3d 74 (Mo.Ct.App.2001); *Schulmeyer v. State Farm Fire & Cas. Co.,* 353 S.C. 491, 579 S.E.2d 132 (2003); *Black v. State Farm Mut. Auto. Ins. Co.,* 101 S.W.3d 427 (Tenn. Ct.App.2002); *Progressive County Mut. Ins. Co. v. Bailey,* 133 S.W.3d 272 (Tex.2004); *State & County Mut. Fire Ins. Co. v. Macias,* 133 S.W.3d 271 (Tex.2004); *American Mfrs. Mut. Ins. Co. v. Schaefer,* 124 S.W.3d 154 (Tex.2003); *Smither v. Progressive County Mut. Ins. Co.,* 76 S.W.3d 719 (Tex.App. 2002); *Carlton v. Trinity Universal Ins. Co.,* 32 S.W.3d 454 (Tex.App.2000); *Wildin v. American Family Mut. Ins. Co.,* 249 Wis.2d 477, 638 N.W.2d 87 (Ct.App.2001).
Virtually all of these courts finding no coverage have done so because, as previously discussed, the word "repair" has a plain meaning that does not encompass repair of diminished market value after the repair is completed. Rather, the plain meaning of repair contemplates physical restoration. *See Pritchett v. State Farm Mut. Auto. Ins. Co.,* 834 So.2d 785, 791 (Ala.Civ.App.2002) (concluding that "[t]he various definitions of repair do not discuss the concept of value . . . in its common usage, the term 'repair' is [not] understood to encompass the concept of value or require a restoration of value."); *O'Brien v. Progressive N. Ins. Co.,* 785 A.2d 281, 290 (Del.2001) (stating that the word repair means "to bring back to good or useable condition"); *Siegle v. Progressive Consumers Ins. Co.,* 819 So.2d 732, 736 (Fla.2002) (stating that " 'repair' means 'to restore by replacing a part or putting together what is torn or broken' "); *Siegle v. Progressive Consumers Ins. Co.,* 788 So.2d 355, 360 (Fla.Dist.Ct.App.2001) (stating that "a return to market value is not what the words 'repair' with 'like kind and quality' commonly connote and is not what an ordinary insured would reasonably understand the phrase to mean."); *Campbell v. Markel Am. Ins. Co.,* 822 So.2d 617, 627 (La.Ct. App.2001) (stating that interpreting the word repair to include the diminished value of an automobile "would go beyond the word's plain meaning"); *Hall v. Acadia Ins. Co.,* 801 A.2d 993, 995 (Me.2002) (noting that repair means "[t]o restore to sound condition after damage or injury"); *Given v. Commerce Ins. Co.,* 440 Mass. 207, 796 N.E.2d 1275, 1280 (2003) (stating that they "will not torture the plain meaning of the terms 'repair' and 'replace' to encompass 'repair' or 'replace[ment]' of damage caused by stigma, a form of damage that, by definition, defies remedy by way of 'repair' or 'replace[ment]' "); *American Mfrs. Mut. Ins. Co. v. Schaefer,* 124 S.W.3d 154, 158 (Tex.2003) (stating that "[t]he concept of repair with regard to a vehicle connotes something tangible, like removing dents or fixing parts").
The two decisions permitting coverage are: *State Farm Mut. Auto. Ins. Co. v. Mabry,* 274 Ga. 498, 556 S.E.2d 114 (2001); *Hyden v. Farmers Ins. Exch.,* 20 P.3d 1222 (Colo. Ct.App.2000).

the "repair or replace" language of the insurance policy, the insurer was "not required to compensate its insured for any possible difference between the value of the insured automobile before the collision and the value of that automobile after the damage caused by the collision has been repaired").

[¶ 30.] Culhane also attempts to distinguish other no-coverage cases by arguing that they had "repair or replace" language, but not the "like kind and quality" language. *See Campbell,* 822 So.2d at 620; *Hall,* 801 A.2d at 995; *Wildin v. American Family Mut. Ins. Co.,* 249 Wis.2d 477, 481–82, 638 N.W.2d 87, 88–89 (Ct.App. 2001). However, even though neither *Hall* nor *Campbell* mentioned "like kind and quality," they did not indicate that this difference would have warranted a different outcome. Instead, like most courts, those cases simply relied upon the plain and ordinary definition of "repair" and from that, concluded there was no coverage for post-repair diminution in value. Only *Wildin* suggested that Culhane's distinction is valid (noting that neither the reasoning nor the result of an earlier case within that jurisdiction was applicable because the earlier case involved the "like kind and quality" language). 249 Wis.2d at 485, 638 N.W.2d at 90.

## VI

[¶ 31.] In the final analysis, Culhane simply disagrees with the almost unanimous view of modern courts considering this issue. Furthermore, of the scores of cases cited by Western, Culhane has attempted to distinguish only a few, while conceding that there is a "legitimate difference of opinion as to the meaning of the 'like kind and quality clause' and the scope of coverage." Based upon the overwhelming weight of authority, the unmistakable trend of virtually all recent decisions, and our decisions in *Stucker* and *Grubbs,* we adopt the majority view. We conclude that absent a showing that the vehicle cannot be repaired to its former physical, mechanical, and operating condition, post-repair diminution in value is excluded by this policy limitation. For this reason, and because Culhane concedes the Audi could be repaired in the sense of restoring appearance and function, we reverse on the diminished value issue.

[¶ 32.] With respect to the bad faith issue, we have stated that "[a]n insurance company is entitled to challenge claims which are fairly debatable and will be found liable only where it has intentionally denied (or failed to process or pay) a claim without a reasonable basis." *Phen v. Progressive N. Ins. Co.,* 2003 SD 133, ¶ 24, 672 N.W.2d 52, 59 (citation omitted). Because of the overwhelming authority holding that Western was not responsible for Culhane's diminished value claim, Western had a reasonable basis to believe that it would not be liable, and it did not act in bad faith in denying this claim. Therefore, we also reverse on the bad-faith claim.

[¶ 33.] Reversed.

[¶ 34.] GILBERTSON, Chief Justice, and KONENKAMP and MEIERHENRY, Justices, and MILLER, Retired Justice, concur.

[¶ 35.] MILLER, Retired Justice, sitting for SABERS, Justice, disqualified.