NOTICE

Decision filed 05/31/06. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-04-0525

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| MICHAEL SIMS and TIFFANY SIMS, on Behalf of Themselves and All Others Similarly Situated, | ) Appeal from the<br>) Circuit Court of<br>) St. Clair County.<br>) |
| Plaintiffs-Appellants, | ) |
| | ) |
| v. | ) No. 99-L-393A |
| | ) |
| ALLSTATE INSURANCE COMPANY, | ) Honorable<br>) Lloyd A. Cueto, |
| Defendant-Appellee. | ) Judge, presiding. |

_____

JUSTICE HOPKINS delivered the opinion of the court:

The plaintiffs, Michael and Tiffany Sims, on behalf of themselves and all others similarly situated, filed a class action for a breach of contract against the defendant, Allstate Insurance Company (Allstate). The circuit court certified the class, determined that Allstate's insurance policy was ambiguous, and submitted the case to a jury. The jury returned a verdict in favor of Allstate.

On appeal, the plaintiffs argue that the circuit court erred in allowing the jury to construe the insurance policy; that the circuit court abused its discretion in allowing Allstate to present evidence regarding its unilateral subjective intent; that the circuit court erred in instructing the jury regarding ambiguity, the burden of proof, and the principle of *contra proferentem*; that, as a matter of law, the insurance policy's limit-of-liability provision was ambiguous and therefore covered the plaintiffs' claims for a loss of value; and that Allstate improperly attacked the ethics and integrity of the plaintiffs' counsel. We affirm on other grounds.

1

FACTS

The plaintiffs' automobiles were damaged while insured by Allstate. Allstate paid the cost to repair each vehicle but did not compensate the plaintiffs for its diminished value (a repaired vehicle's loss in market value resulting from the fact that it suffered property damage). The plaintiffs initiated this class action, alleging that by failing to compensate them for their damaged but repaired vehicle's diminished value, Allstate breached its contract.

Allstate's collision and comprehensive coverages for an insured's automobile are governed by section six of its insurance policy. Section six is entitled "Protection Against Loss To The Auto," is substantially the same in each class state, and states as follows:

"**COVERAGE DD**

Auto Collision Insurance

ALLSTATE will pay for direct and accidental loss to YOUR insured AUTO *** (including insured loss to an attached trailer) from a collision with another object or by upset of that AUTO or trailer. ***

\* \* \*

**COVERAGE HH**

Auto Comprehensive Insurance

ALLSTATE will pay for direct and accidental loss to YOUR insured AUTO *** not caused by collision. ***

\* \* \*

**Payment Of Loss By Allstate**

ALLSTATE may pay for the loss in money, or may repair or replace the damaged or stolen property. ***

2

**Limits of Liability**

ALLSTATE'S limit of liability is the actual cash value of the property or damaged part of the property at the time of loss. The actual cash value will be reduced by the deductible for each coverage as shown on the declarations page. However, OUR liability will not exceed what it would cost to repair or replace the property or part with other of like kind and quality."

Prior to the trial, Allstate moved to dismiss the plaintiffs' action on the basis that the "Payment of Loss" and "Limits of Liability" provisions of the policy did not require Allstate to pay for diminished value. The circuit court determined that the insurance policy was ambiguous, and the court denied Allstate's motion to dismiss. The case was tried before a jury, and the jury rendered a general verdict in favor of Allstate. The circuit court denied the plaintiffs' posttrial motion, and the plaintiffs filed a timely appeal.

ANALYSIS

The plaintiffs argue that the diminished value of an adequately repaired vehicle is a "direct and accidental loss" that Allstate is required to compensate under the policy's insuring provision. Allstate does not dispute that the term "loss" could encompass a vehicle's diminished value, but it contends that the insuring language must be construed in light of the "Limits of Liability" and "Payment of Loss" sections. Allstate argues that these provisions are clear and unambiguous and preclude an insured's recovery for a vehicle's diminished value.

The plaintiffs counter that the phrase "repair or replace *** with other of like kind and quality" in the "Limits of Liability" section encompasses an inherent concept of value, is at the least ambiguous, and therefore requires Allstate to compensate the plaintiffs for their vehicles' diminution in value. The plaintiffs argue that because the policy requires that a repair or replacement be of "like kind and quality," the vehicle must be repaired so that there

3

is no remaining physical damage and no loss in value and that, otherwise, Allstate must pay to compensate its insured for the vehicle's diminished value.

While a vehicle's diminished value may be a "loss" under the policy's insuring provision, we agree with Allstate that its obligation to compensate the insured for that loss is circumscribed by the plain language of the policy's "Limits of Liability" and "Payment of Loss" sections.

"The construction of an insurance policy is a question of law." *Pekin Insurance Co. v. Estate of Goben*, 303 Ill. App. 3d 639, 642 (1999). "When construing the language of an insurance policy, the court's primary objective is to ascertain and give effect to the intentions of the parties as expressed in their agreement." *Pekin Insurance Co.*, 303 Ill. App. 3d at 642. When determining the parties' intentions as expressed in the contract, the court must construe the policy as a whole, giving effect to every part. *Hartford Accident & Indemnity Co. v. Case Foundation Co.*, 10 Ill. App. 3d 115, 121 (1973); *Miller v. Madison County Mutual Automobile Insurance Co.*, 46 Ill. App. 2d 413, 417 (1964). An insurance policy must be construed according to the sense and the meaning of the terms, and if the language is clear and unambiguous, it must be given its plain, ordinary, and popular sense. *Pekin Insurance Co.*, 303 Ill. App. 3d at 642.

"Although it is true that limitations on an insurer's liability must be construed liberally in favor of the policyholder [citation], the rule comes into play only where there is an ambiguity." *Menke v. Country Mutual Insurance Co.*, 78 Ill. 2d 420, 424 (1980). "A provision in an insurance policy is deemed ambiguous if it is subject to more than one reasonable interpretation." *Economy Fire & Casualty Co. v. Bassett*, 170 Ill. App. 3d 765, 769 (1988). A contract provision is not rendered ambiguous simply because the parties do not agree on its meaning. *Johnstowne Centre Partnership v. Chin*, 99 Ill. 2d 284, 288 (1983). "While it is highly important that ambiguous clauses should not be permitted to serve as

4

traps for policy[]holders, it is equally important to the policy[]holders, as well as to the insurer, that definite and clear provisions, upon which the calculations of the company are based, should be maintained unimpaired by loose or ill-considered interpretation." *Coons v. Home Life Insurance Co. of New York*, 368 Ill. 231, 238 (1938). The touchstone in determining whether an ambiguity exists is whether the relevant portion of the policy is subject to more than one reasonable interpretation, not whether creative possibilities can be suggested. *Bruder v. Country Mutual Insurance Co.*, 156 Ill. 2d 179, 193 (1993). "[T]he rule construing ambiguous provisions strictly against the insurer will not permit perversions of plain language to create an ambiguity where none in facts exists." *Miller*, 46 Ill. App. 2d at 418; see also *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005).

The "Limits of Liability" section of the policy states that Allstate's liability "will not exceed what it would cost to repair or replace the property or part with other of like kind and quality." Allstate has promised "to repair or replace the property or part with other of like kind and quality," but there is no promise to restore the value of the vehicle. See *Allgood v. Meridian Security Insurance Co.*, 836 N.E.2d 243, 247 (Ind. 2005). The plain and ordinary meanings of "repair" and "replace" connote the remedying of tangible, physical damage. See Webster's Third New International Dictionary 1923 (1993) ("repair" means "to restore by replacing a part or putting together what is torn or broken"); Black's Law Dictionary 1298 (6th ed. 1990) ("repair" means "[t]o mend, remedy, restore, renovate" or "[t]o restore to a sound or good state after decay, injury, dilapidation, or partial destruction"); Webster's Third New International Dictionary 1925 (1993) ("replace" means to "restore to a former place, position, or condition"); Black's Law Dictionary 1299 (6th ed. 1990) ("replace" means "to restore to a former condition"). By their definitions and the common understanding of the terms, "repair" and "replace" mean to restore something to its former condition, not to its former value. See *Allgood*, 836 N.E.2d at 247-48 ("[d]iminution in value can be

compensated, but it cannot be 'repaired' or 'replaced' "); *Culhane v. Western National Mutual Insurance Co.*, 2005 SD 97, ¶24, 704 N.W.2d 287, 295 (2005) ("the ordinary meaning of the words 'repair' and 'replace' indicate something physical and tangible"); *Given v. Commerce Insurance Co.*, 440 Mass. 207, 212-13, 796 N.E.2d 1275, 1280 (2003) (the plain meaning of the terms "repair" and "replace" do not encompass "repair" or "replace[ment]" of damage caused by stigma, a form of damage that, by definition, defies a remedy by way of "repair" or "replace[ment]"); *American Manufacturers Mutual Insurance Co. v. Schaefer*, 124 S.W.3d 154, 158 (Tex. 2003) (the term "repair" with regard to a vehicle connotes something tangible, like removing dents or fixing parts, not value); *Hall v. Acadia Insurance Co.*, 2002 ME 110, ¶7, 801 A.2d 993, 995 (2002) ("[t]he act of repairing an object typically focuses upon restoring the object's function and purpose, and not upon returning the object to its earlier worth or value"); see also *Townsend v. State Farm Mutual Automobile Insurance Co.*, 34,901, p. 9 (La. App. 2 Cir. 8/22/01); 793 So. 2d 473, 478 (general prevailing meaning of "repair" is to fix, restore, or mend physical damage and does not encompass the restoration of value, an item of damage that cannot be physically repaired); *Carlton v. Trinity Universal Insurance Co.*, 32 S.W.3d 454, 464 (Tex. App. 2000) (there is no concept of value in the ordinary meanings of "repair" and "replace"). "Ascribing to the words 'repair or replace' an obligation to compensate the insured for things [*i.e.*, diminished market value] which, by their very nature, cannot be 'repaired' or 'replaced' would violate the most fundamental rules of contract construction." *Carlton*, 32 S.W.3d at 464; see also *O'Brien v. Progressive Northern Insurance Co.*, 785 A.2d 281, 290-91 (Del. 2001).

To expand the ordinary meaning of "repair or replace *** with other of like kind and quality" to include an intangible, diminished-value element would be ignoring the policy's language or giving the policy's text a meaning never intended. *Siegle v. Progressive Consumers Insurance Co.*, 819 So. 2d 732, 738 (Fla. 2002); see also *Schaefer*, 124 S.W.3d at

160 (to require the insurer, who elects to repair, to additionally pay cash for the market's diminished perception incorporates an intangible-value element into the repair provision that simply does not exist in the policy's language). The Indiana Supreme Court has explained:

" '[L]ike kind and quality' refers to 'replace,' not 'repair[,]' which encompasses the notion of restoring property to its former condition. Only to the extent parts are replaced does a 'repair' entail 'property of like kind or quality.' To say one would repair an item with goods of like kind or quality is simply not correct English. An item of property (or a part of that item) is 'replaced' with other property, but it is 'repaired' with tools and labor. *** '[L]ike kind and quality' unambiguously refers only to replacement, not to repairs, and the verb 'restore' appears nowhere in the policy." *Allgood*, 836 N.E.2d at 247-48.

If an insurer elects to repair a vehicle and must replace parts in doing so, it must use parts of "like kind and quality," and if an insurer elects to replace the vehicle, it must do so with a vehicle of "like kind and quality." See *Schaefer*, 124 S.W.3d at 160. The limit-of-liability provision includes no reference to diminished value or the restoration of value, and the plain and ordinary meaning of the provision's language precludes an insured's recovery for the diminished market value of a damaged but repaired vehicle.

Additionally, the language of the "Limits of Liability" provision demonstrates that Allstate knew how to say "value" when it meant "value." See *Townsend*, 34,901, p. 10; 793 So. 2d at 479. Allstate's limit of liability is "the actual cash value of the property or damaged part of the property at the time of loss," but Allstate's liability "will not exceed what it would cost to repair or replace the property or part with other of like kind and quality." Allstate therefore has the option to pay the actual cash value of the property or part at the time of the loss *or* to pay the cost to repair the property or to replace the property or part with one of like kind and quality. If Allstate's policy provision was intended to guarantee the market value of

the automobile after an election to repair, Allstate would have used the phrase "actual cash value" instead of "like kind and quality." See *Ray v. Farmers Insurance Exchange*, 200 Cal. App. 3d 1411, 246 Cal. Rptr. 593 (1988); see also *Camden v. State Farm Mutual Automobile Insurance Co.*, 66 S.W.3d 78, 82 (Mo. App. 2001) (the term "repair," particularly considering that it is the option contrary to cash value, does not inherently include the concept of value). The policy's language allows the insurer to choose to pay either the actual cash value of the vehicle or the amount necessary to repair, not some combination of the two. If a combination of the two were allowed, the insurer's obligation to compensate the loss would be cumulative–repair or replace *and* pay diminished value, and the language does not so provide. See *Schaefer*, 124 S.W.3d at 159.

In addition to applying the plain meaning of the policy's language, we must also read the policy as a whole, giving effect to the "Payment of Loss" provision. See *Hartford Accident & Indemnity Co.*, 10 Ill. App. 3d at 121. Pursuant to this section of the policy, the insurer has an option to "pay for the loss in money, or may repair or replace the damaged or stolen property." Including diminished value in the terms "repair or replace" would force an insurer that chooses to compensate a loss by exercising the "repair or replace" option to also pay money, ignoring the clause's disjunctive language and rendering the clause meaningless. See *Schaefer*, 124 S.W.3d at 160. Although the plaintiffs argue that the trial testimony demonstrated that Allstate generally declined to utilize its right to repair the vehicle, because it would be assuming the duty of having the repairs made with due care, the policy as a whole is facially unambiguous; therefore, we interpret the policy as a matter of law, without resorting to extrinsic evidence. See *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 462 (1999). The policy does not contemplate the repair or replacement of property or parts plus an additional payment of money for unrepairable diminished value. See *Culhane*, 2005 SD at ¶23, 704 N.W.2d at 295.

We find no ambiguity in the contractual terms of Allstate's automobile insurance policy. The policy clearly does not allow an insured to recover for a diminution in value. See *Allgood*, 836 N.E.2d 243 (the phrase "repair or replace the property with other property of like kind and quality" is not ambiguous and does not allow the insured to recover for the repaired vehicle's diminished value); *Culhane*, 2005 SD 97, 704 N.W.2d 287 (an unambiguous policy requires the insurer to restore the vehicle to its preloss physical and operating condition, not to compensate for its loss of value); *Given*, 440 Mass. 207, 796 N.E.2d 1275 (no objectively reasonable insured would conclude that "repair" or "replace" includes compensation for a diminution in market value or for anything else beyond the restoration of the vehicle's precollision physical condition); *Schaefer*, 124 S.W.3d 154 (the phrase "repair or replace the property with other of like kind and quality" clearly requires the insurer to restore the vehicle to its preloss physical and operating condition, not its preloss value); *Schulmeyer v. State Farm Fire & Casualty Co.*, 353 S.C. 491, 579 S.E.2d 132 (2003) (there was no concept of value in the policy's "repair or replacement" terminology); *Hall*, 2002 ME 110, 801 A.2d 993 (the unambiguous "repair" language of the policy precludes a recovery for a diminution in value, a loss that cannot be repaired); *Siegle*, 819 So. 2d 732 (the phrase "repair or replace the property with other of the like kind and quality" clearly limited the insurer's liability to a monetary amount necessary to repair the car's function and appearance, not value); *O'Brien*, 785 A.2d 281 (under the unambiguous "repair or replace" limitations in the policy, the insurer was obligated to repair or replace vehicle parts only to the extent necessary to return the automobile to substantially the same physical, operating, and mechanical condition, but not the value it had before the accident); see also *Pritchett v. State Farm Mutual Automobile Insurance Co.*, 834 So. 2d 785 (Ala. Civ. App. 2002) (the words "repair" and "with like kind and quality" do not connote a return to market value); *Camden*, 66 S.W.3d 78 (diminished value is not a covered loss pursuant to the unambiguous

9

language of the policy); *Townsend*, 34,901, p. 13; 793 So. 2d at 480 (the insurer's liability was limited to the cost of restoring the damaged automobile "to substantially the same physical condition [not value] as before the accident"); *Johnson v. State Farm Mutual Automobile Insurance Co.*, 157 Ariz. 1, 754 P.2d 330 (App. 1988) (the phrase "pay to repair or replace the property or part with like kind and quality" contemplates the restoration of physical condition, rather than the restoration of value); *Ray*, 200 Cal. App. 3d 1411, 246 Cal. Rptr. 593 (the policy language unambiguously required the insurer to restore the automobile to its precollision condition, but not to its precollision value).

We recognize that some jurisdictions have reached the opposite conclusion regarding similar policy provisions. *State Farm Mutual Automobile Insurance Co. v. Mabry*, 274 Ga. 498, 556 S.E.2d 114 (2001) (the provision affording the insurer the option to repair serves only to abate, not eliminate, the insurer's liability for a diminution in value); *Venable v. Import Volkswagen, Inc.*, 214 Kan. 43, 519 P.2d 667 (1974) (when the insurer elects to repair or rebuild, the insurer is obligated to put the vehicle in substantially the same condition as it was prior to the collision, to render it as valuable and as serviceable as before); *Potomac Insurance Co. v. Wilkinson*, 213 Miss. 520, 57 So. 2d 158 (1952) (if, despite repairs, there remains a loss in actual market value, that deficiency is added to the cost of the repairs); *Dunmire Motor Co. v. Oregon Mutual Fire Insurance Co.*, 166 Or. 690, 114 P.2d 1005 (1941) (a replacement means the restoration of the property to its preinjury condition, and a restoration is not complete unless there is no diminution of value after the repair of the vehicle); see also *Hyden v. Farmers Insurance Exchange*, 20 P.3d 1222 (Colo. App. 2000) (the phrase "of like kind and quality" is ambiguous so that when the insurer promises to provide a vehicle "of like kind and quality," the insurer must provide the insured, through repair, replacement, and/or compensation, the means of acquiring a vehicle substantially similar in function and value to that which the insured had prior to the accident). We

10

respectfully decline to join the opposing jurisdictions that have ignored the policy's clear and unambiguous language to give the policy's text a meaning never intended.

We conclude, as a matter of law, that the language of this policy, when read as a whole, is clear and unambiguous, requires Allstate to restore the insured's vehicle to preaccident mechanical function and condition, and does not require Allstate to compensate its insured for a repaired vehicle's loss in market value due to the fact that it suffered damage. Accordingly, the circuit court erred in finding that the policy language was ambiguous and sending the case to a trial before a jury. We find in favor of Allstate, as a matter of law, and we need not address the plaintiffs' remaining arguments on appeal.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court of St. Clair County in favor of Allstate, for reasons other than those relied on by the circuit court.


Affirmed.


SPOMER, P.J., concurs.


JUSTICE WELCH, dissenting:

I respectfully dissent. As set forth in the majority opinion, the insurance policy provides that Allstate will "pay for direct and accidental loss to YOUR insured AUTO" (collision coverage) and that Allstate will "pay for direct and accidental loss to YOUR insured AUTO *** not caused by collision" (comprehensive coverage). Allstate does not dispute that the term "loss" could include a vehicle's diminished value. In addition, there is no dispute that the policy fails to explicitly exclude from coverage, after the vehicle's repair, the loss sustained because of the vehicle's diminished value. Because the provisions in the

11

policy do not exclude the loss sustained by a repaired vehicle's diminished value, I believe there is an ambiguity in the policy that must be construed against Allstate as the drafter. If Allstate, the drafter of the insurance policy, did not want its insureds to reasonably believe that they would be compensated for the entire loss, including the diminished value of the vehicle, Allstate should have specifically so stated in the policy. The policy could have stated, "The term 'loss' in this policy does not include the diminished value of an insured vehicle," to avoid any ambiguity regarding this coverage. Because I believe that a reasonable person, after reviewing the policy, would believe that the coverage would return him or her to the same financial position he or she was in immediately prior to the accident, I must respectfully dissent.

NO. 5-04-0525

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| MICHAEL SIMS and TIFFANY SIMS, on Behalf of Themselves and All Others Similarly Situated, | ) ) ) ) | Appeal from the Circuit Court of St. Clair County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 99-L-393A |
| ALLSTATE INSURANCE COMPANY, | ) ) ) | Honorable Lloyd A. Cueto, |
| Defendant-Appellee. | ) | Judge, presiding. |

**Opinion Filed**: May 31, 2006

**Justices**: Honorable Terrence J. Hopkins, J.

Honorable Stephen L. Spomer, P.J., concurs
Honorable Thomas M. Welch, J., dissents

**Attorneys for Appellants**

Mark C. Goldenberg, Elizabeth V. Heller, Goldenberg, Miller, Heller & Antognoli, P.C., 227 S. State Route 157, P.O. Box 959, Edwardsville, IL 62025; Michael B. Hyman, Melinda J. Morales, Much Shelist Freed Denenberg Ament & Rubenstein, P.C., 191 North Wacker Drive, 18th Floor, Chicago, IL 60606; Robert E. Becker, Kevin T. Hoerner, Becker Paulson Hoerner & Thompson, P.C., 5111 West Main Street, Belleville, IL 62226; Elizabeth J. Cabraser, Scott P. Nealey, Lieff, Cabraser, Heimann & Bernstein, LLP, 275 Battery Street, 30th Floor, San Francisco, CA 94111-3339

**Attorneys for Appellee**

Jeffrey P. Lennard, Richard L. Fenton, Margo Weinstein, Sonnenschein Nath & Rosenthal LLP, 8000 Sears Tower, Chicago, IL 60606; Gordon R. Broom, Troy A. Bozarth, Burroughs Hepler Broom MacDonald Hebrank & True LLP, 103 West Vandalia Street, Suite 300, Edwardsville, IL 62025-0510; H. Sinclair Kerr, Jr., Kerr & Wagstaffe LLP, 100 Spear Street, Suite 1800, San Francisco, CA 94105