[No. 30880-1-II. Division Two. March 16, 2010.]

DAVID MOELLER, *on Behalf of Himself and Others Similarly Situated, Appellant*, v. FARMERS INSURANCE COMPANY OF WASHINGTON ET AL., *Respondents*.

134

*Stephen M. Hansen*; and *Kenneth W. Masters* (of *Wiggins & Masters PLLC*) (*Elizabeth Cabraser* and *Scott P. Nealey* of *Lieff Cabraser Heimann & Bernstein*, of counsel), for appellants.

*Scott A. Jonsson* (of *The James Law Group LLC*) and *Jill D. Bowman* (of *Stoel Rives LLP*), for respondents.

¶1 HOUGHTON, J. — David Moeller insured his automobile through Farmers Insurance Company. After the vehicle sustained damage in a collision, Farmers paid the full cost of repairs, less a deductible. Moeller claimed that the policy covered loss for the diminished value of his vehicle, but Farmers disagreed.

¶2 Moeller filed a class action lawsuit, alleging breach of contract, insurance bad faith, and violations of the Washington Administrative Code and Consumer Protection Act (CPA).[1] The trial court certified a class under CR 23(b)(3). It then granted Farmers' motion for summary judgment, finding that the policy did not cover diminished value, and dismissed the CPA claims.

¶3 Moeller appeals the order granting summary judgment. Farmers cross-appeals the class action certification. We affirm in part, reverse in part, and remand for further proceedings.

[1] Ch. 19.86 RCW.

## FACTS

¶4 Moeller owned a 1996 Honda Civic CRX. Farmers insured the vehicle, covering loss from collision and comprehensive damage. After his vehicle sustained accident damage, Moeller notified Farmers. An adjuster inspected and elected to repair the vehicle. Farmers did not compensate Moeller for the vehicle's diminished value, that is, damage that cannot be repaired such as weakened metal.

¶5 Moeller filed a third amended class action complaint against Farmers and Farmers Insurance Exchange (collectively Farmers) on behalf of himself and all others similarly situated (collectively Moeller). In his complaint, Moeller alleged (1) breach of contract, (2) insurance bad faith, (3) failure to disclose information/CPA violation, and (4) failure to make prompt payment of claim.

¶6 At the crux of Moeller's complaint was Farmers' failure to restore his vehicle to its "pre-loss condition through payment of the difference in the value between the vehicle's pre-loss value and its value after it was damaged, properly repaired and returned." Clerk's Papers (CP) at 435.

¶7 After four days of oral argument, the trial court certified a class under CR 23(b)(3). We denied Farmers' motion for discretionary review of that order.

¶8 Farmers moved for summary judgment, claiming (1) the policy did not cover diminished value and (2) its denial of the diminished value claim was reasonable as a matter of law, thus barring Moeller's bad faith and CPA claims.[2] The trial court granted the motion.

¶9 Moeller appeals and Farmers cross-appeals.

---

[2] For our purposes, Moeller's bad faith and failure to make prompt payment claims fold into the CPA argument.

## ANALYSIS

### Policy Language

¶10 The relevant portions of the policy provide:

**DEFINITIONS**

. . . .

**Accident** or **occurrence** means a sudden event, including continuous or repeated exposure to the same conditions, resulting in **bodily injury** or **property damage** neither expected nor intended by the **Insured person**.

. . . .

**Damages** are the cost of compensating those who suffer **bodily injury** or **property damage** from an **accident**.

. . . .

**Property damage** means physical injury to or destruction of tangible property, including loss of its use.

. . . .

**PART IV - DAMAGE TO YOUR CAR**

. . . .

**Coverage G - Collision**

We will pay for **loss** to **your Insured car** caused by **collision** less any applicable deductibles.

. . . .

**Additional Definitions Used in This Part Only**

. . . .

2. **Loss** means direct and accidental loss of or damage to **your Insured car**, including its equipment.

. . . .

**Limits of Liability**

Our limits of liability for **loss** shall not exceed:

1. The amount which it would cost to repair or replace damaged or stolen property with other of like kind and quality, or with new property less an adjustment for physical deterioration and/or depreciation.

. . . .

**Payment of Loss**

We may pay the **loss** in money or repair or replace damaged or stolen property.

CP at 12, 19-20.

STANDARD OF REVIEW

¶11 We review orders granting summary judgment de novo, engaging in the same inquiry as the trial court. *Qwest Corp. v. City of Bellevue*, 161 Wn.2d 353, 358, 166 P.3d 667 (2007). On review of any pleadings, depositions, answers to interrogatories, admissions, and affidavits on file, a court may grant summary judgment if there are no genuine issues as to any material fact, thus entitling the moving party to judgment as a matter of law. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005); CR 56(c).[3] When reasonable persons could reach but one conclusion, summary judgment may be granted. *Hansen v. Friend*, 118 Wn.2d 476, 485, 824 P.2d 483 (1992).

¶12 We interpret an insurance policy using contract analysis as a matter of law. *Quadrant Corp. v. Am. States Ins. Co.*, 154 Wn.2d 165, 171, 110 P.3d 733 (2005). We review de novo a summary judgment ruling on contract interpretation. *Allstate Ins. Co. v. Peasley*, 131 Wn.2d 420, 423-24, 932 P.2d 1244 (1997).

¶13 When interpreting a policy's terms, we do not analyze words and phrases in isolation. *Peasley*, 131 Wn.2d at 424. Rather, we read the policy in its entirety, giving effect to each provision. *Peasley*, 131 Wn.2d at 424.

¶14 An insurance policy must be interpreted in the manner in which the average insured would understand it.

---

[3] CR 56(c) provides, in relevant part, "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

*Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wn.2d 654, 666, 15 P.3d 115 (2000). We give terms not defined in the policy their " 'plain, ordinary, and popular' " meaning. *Kitsap County v. Allstate Ins. Co.*, 136 Wn.2d 567, 576, 964 P.2d 1173 (1998) (quoting *Boeing Co. v. Aetna Cas. & Sur. Co.*, 113 Wn.2d 869, 877, 784 P.2d 507 (1990)). We may ascertain this by referring to standard English dictionaries. *Matthews v. Penn-Am. Ins. Co.*, 106 Wn. App. 745, 765, 25 P.3d 451 (2001).

¶15 When faced with clear and unambiguous language, we enforce the policy as written. *Peasley*, 131 Wn.2d at 424. An ambiguous clause is one susceptible to two different, reasonable interpretations. *McDonald v. State Farm Fire & Cas. Co.*, 119 Wn.2d 724, 733, 837 P.2d 1000 (1992). Extrinsic evidence is admissible to assist the court in ascertaining the parties' intent and in interpreting the contract. *U.S. Life Credit Life Ins. Co. v. Williams*, 129 Wn.2d 565, 569, 919 P.2d 594 (1996). After examining the available extrinsic evidence, we resolve any remaining ambiguity against the insurer and in favor of the insured. *Quadrant Corp.*, 154 Wn.2d at 172.

¶16 Our analysis differs, depending on whether an inclusionary or exclusionary clause is at issue. *See Mercer Place Condo. Ass'n v. State Farm Fire & Cas. Co.*, 104 Wn. App. 597, 602-03, 17 P.3d 626 (2000). We liberally construe inclusionary clauses, providing coverage whenever possible. *Ross v. State Farm Mut. Auto. Ins. Co.*, 132 Wn.2d 507, 515-16, 940 P.2d 252 (1997). In contrast, we strictly construe exclusionary clauses against the drafter. *Quadrant Corp.*, 154 Wn.2d at 172.

# BREACH OF CONTRACT

## Coverage Clause[4]

¶17 First, Moeller contends that his policy covers diminished value.[5] Although Moeller does not seek stigma damages, we begin our analysis by explaining the differences between diminished value and stigma damages. A vehicle suffers "diminished value" when it sustains physical damage in an accident, but due to the nature of the damage, it cannot be fully restored to its preloss condition. Weakened metal that cannot be repaired is one such example. In contrast, "stigma damages" occur when the vehicle has been fully restored to its preloss condition, but it carries an intangible taint due to its having been involved in an accident.

¶18 The coverage clause states that Farmers "will pay for **loss** to **your Insured car** caused by **collision** less any applicable deductibles."[6] CP at 19. The definitions state that "loss" is the "direct and accidental loss of or damage to **your Insured car**, including its equipment." CP at 19. Although the policy does not define "accidental," it provides that "accident" means "a sudden event . . . resulting in . . . **property damage** neither expected nor intended by the **Insured person**." CP at 12. Moreover, the policy defines "property damage" as "physical injury to or destruction of tangible property, including loss of its use." CP at 12.

---

[4] The question presented is not whether *any* insured may recover for diminished value in Washington. *But see* Br. of Resp'ts/Cross Appellants at 6 ("the question of a first-party insured's contractual entitlement to payment for a vehicle's diminished value is one of first impression in this state"). Rather, the issue is whether Moeller's insurance policy covers diminished value. This distinction is important.

[5] Farmers does not explicitly address coverage but, rather, it argues that the limits of liability clause precludes recovery for diminished value. *See* Br. of Resp'ts/Cross Appellants at 10.

[6] The parties do not dispute that this incident involved an accidental collision with Moeller's insured vehicle.

¶19 But the policy does not define "direct" and "damage."[7] Accordingly, we examine a standard English dictionary to determine their plain and ordinary meanings. *Matthews*, 106 Wn. App. at 765.

¶20 "Direct" means "without any intervening agency or step : without any intruding or diverting factor." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 640 (1976). Commentators generally agree with this definition. As noted in *Couch on Insurance*, where an insurance policy covers direct and accidental loss to the insured vehicle, the term "direct" "refers to [a] causal relationship, and is to be interpreted as limited to the harm resulting from an immediate or proximate cause as distinguished from a remote cause." 11 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE, § 156:21 (3d ed. Supp. 2009) (footnotes omitted). In addition, "damage" is defined as "loss due to injury : injury or harm to person, property, or reputation." WEBSTER's, *supra*, at 571.

¶21 Moeller's collision damages have been repaired and Farmers paid for those repairs. But there remains damage that cannot be repaired, e.g., weakened metal. Farmers has not paid for this diminished value loss.

¶22 Here, the policy covers diminished value. "[D]irect" losses include those proximately caused by the initial harm. CP at 19. A collision begins a chain of events that sometimes results in a tangible, physical injury that cannot be fully repaired. Absent an intervening cause, diminished value is a loss proximately caused by the collision and thus is covered. As Moeller argues, "[B]ecause it is indisputable that there was physical injury to [his] vehicle[ ], any and all damages flowing therefrom, and not expressly excluded by the policy, are clearly covered." Appellant's Br. at 22.

---

[7] The policy defines the term "damages" as "the cost of compensating those who suffer **bodily injury** or **property damage** from an **accident**." CP at 12. For purposes of this contract policy, the terms "damages" and "damage" apparently have different meanings.

¶23 Because the policy covers diminished value, we examine whether Farmers limited its liability elsewhere in the policy.[8]

## LIMITS OF LIABILITY CLAUSE

¶24 Moeller next contends that the limits of liability clause[9] does not preclude recovery for diminished value.[10] We agree.

¶25 Here, the limits of liability clause provides that Farmers' liability for loss would not exceed "[t]he amount which it would cost to repair or replace damaged . . . property with other of like kind and quality, or with new

---

[8] Washington courts have not analyzed similar policy language to determine whether diminished value is a covered loss. But other jurisdictions have addressed this issue. Most courts have determined that diminished value is a covered loss under a "direct and accidental loss" coverage clause. *See, e.g., Campbell v. Markel Am. Ins. Co.*, 2000-1448 (La. App. 1 Cir. 9/21/01), 822 So. 2d 617, 623 (2001) (after noting that the insurer did not dispute that diminished value was a covered loss, the court agreed that the phrase "direct and accidental loss" was broad enough to cover diminished value).

[9] Although the parties briefly address the exclusions clause, neither focuses on this argument. Because "diminished value" is not specifically named in the exclusions clause and we give a narrow reading to such clauses, the question is not whether diminished value is excluded under the contract. Rather, our inquiry is whether the limits of liability clause prohibits recovery of diminished value.

[10] Both parties rely extensively on case law from other jurisdictions, some of which allow recovery for diminished value, *see, e.g., Hyden v. Farmers Ins. Exch.*, 20 P.3d 1222 (Colo. Ct. App. 2000); *State Farm Mut. Auto. Ins. Co. v. Mabry*, 274 Ga. 498, 556 S.E.2d 114 (2001); and others that deny such recovery, *see, e.g., Ray v. Farmers Ins. Exch.*, 200 Cal. App. 3d 1411, 246 Cal. Rptr. 593 (1988); *Sims v. Allstate*, 365 Ill. App. 3d 997, 851 N.E.2d 701, 303 Ill. Dec. 514 (2006); *Allgood v. Meridian Sec. Ins. Co.*, 836 N.E.2d 243 (Ind. 2005); *Davis v. Farmers Ins. Co. of Ariz.*, 2006 NMCA 99, 140 N.M. 249, 142 P.3d 17; *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154 (Tex. 2003).

In a majority of these cases, the policy expressly limits liability to the "lesser" of the vehicle's "actual cash value" or the cost of repair or replacement. *See, e.g., Schaefer*, 124 S.W.3d at 156. Most cases involving this "lesser" and "actual cash value" language have declined recovery for diminished value because the insured was not entitled to both repairs and monetary compensation. *See Schaefer*, 124 S.W.3d at 159. Instead, the insurer could choose the "lesser" of these options. There is no such language here. Because of the different policy language, these cases are of limited value in our analysis.

In other jurisdictions, the courts found no ambiguity, thus distinguishing them from the situation here. *Sims*, 851 N.E.2d at 707; *Allgood*, 836 N.E.2d at 248; *Davis*, 142 P.3d at 24.

property less an adjustment for physical deterioration and/or depreciation." CP at 20. When read alone, the terms "repair" and "replace" are unambiguous. But "repair" and "replace" cannot be read in isolation. *See Peasley*, 131 Wn.2d at 424 (noting that words and phrases cannot be interpreted in isolation). Instead, we must examine whether Farmers' obligation to "repair or replace damaged . . . property with other of like kind and quality" is ambiguous. CP at 20.

¶26 The policy does not define the terms "like," "kind," and "quality" and, therefore, we turn again to a standard English dictionary. *Matthews*, 106 Wn. App. at 765. "Like" is defined as "the same as or similar to." WEBSTER'S, *supra*, at 1310. *Webster's* provides that "kind" refers to "fundamental nature." WEBSTER'S, *supra*, at 1243. And "quality" is a "degree of excellence : GRADE, CALIBER." WEBSTER'S, *supra*, at 1858.

¶27 Moeller posits that the clause "like kind and quality" means a restoration of *appearance*, *function*, and *value*. He argues that the amount of his premiums was based, in part, on the preloss value of the vehicle. When the vehicle returned from the auto shop, the average insured could reasonably expect it to be similar in nature, caliber, and value. Otherwise stated, after repair or replacement with like kind and quality, the vehicle's capacity and value postloss should be similar to its capacity and value preloss. This is a reasonable interpretation.[11]

¶28 Farmers argues that the "like kind and quality" could reasonably be an obligation to restore the vehicle to a similar appearance and function. As it explains, "Just as a plate that is broken in two can be repaired by gluing the parts together and making the plate usable again, a damaged car can be repaired by pounding out dents or replacing damaged parts so that the vehicle can be driven again." Br. of Resp'ts/Cross Appellants at 13. Farmers asserts that a

---

[11] In a strikingly similar case, *Gonzales v. Farmers Ins. Co. of Or.*, 345 Or. 382, 196 P.3d 1 (2008), the Oregon Supreme Court found coverage. In doing so, it relied on established Oregon precedent. *Gonzales*, 196 P.3d at 7-8.

reasonable interpretation of this clause suggests that the vehicle need only be "restored to good condition with parts and workmanship of the same essential nature that existed on the vehicle prior to the accident." Br. of Resp'ts/Cross Appellants at 18-19.

¶29 Farmers' argument about the reasonableness of its interpretation does not persuade us. Even under its interpretation, the vehicle could not be restored to its preloss status because the nature of metal and stressed, but working, parts cannot be repaired.

¶30 The limits of liability clause does not exclude recovery here. We reverse the summary judgment order and remand.

## CONSUMER PROTECTION ACT

¶31 Next, Moeller contends that Farmers' actions constituted per se violations of the Washington Administrative Code and, thus, per se violations of the CPA. Here, the trial court determined that Moeller premised his CPA claim on a successful breach of contract claim. Because we reverse the trial court's summary judgment on the contract claim, we remand for further proceedings on Moeller's CPA claim.

## CROSS APPEAL ON CLASS CERTIFICATION

¶32 In its cross appeal, Farmers argues that the trial court abused its discretion when it certified a class under CR 23(b)(3). We disagree.

¶33 When a party seeks class certification, it must satisfy the requirements of CR 23. Under CR 23(a), numerosity, commonality, typicality, and adequacy of representation comprise the four prerequisites to certification.[12] Farmers does not challenge these prerequisites.

---

[12] CR 23(a) provides:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members

¶34 In addition to the demands of CR 23(a), a party must also satisfy one of the three requirements of CR 23(b). Here, the trial court certified a class under CR 23(b)(3), which provides for certification if

[t]he court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

¶35 We review the trial court's decision for a manifest abuse of discretion. *Nelson v. Appleway Chevrolet, Inc.*, 160 Wn.2d 173, 188-89, 157 P.3d 847 (2007). A trial court abuses its discretion when it bases its decision on untenable or unreasonable grounds. *Chuong Van Pham v. Seattle City Light*, 159 Wn.2d 527, 538, 151 P.3d 976 (2007). Generally, we uphold the certification decision if it has tenable, reasonable support and if the record indicates that the trial court considered the CR 23 criteria. *Nelson*, 160 Wn.2d at 188-89.

¶36 Although we liberally construe CR 23 in favor of certification, class actions must strictly conform to the rule's requirements. *Weston v. Emerald City Pizza, LLC*, 137 Wn. App. 164, 168, 151 P.3d 1090 (2007). When determining whether to certify a class, the trial court must engage in a rigorous analysis to ensure that the prerequisites of CR 23 have been established. *Weston*, 137 Wn. App. at 168.

---

is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

 ¶37 Courts afford CR 23 liberal interpretation because it "avoids multiplicity of litigation, 'saves members of the class the cost and trouble of filing individual suits[,] and . . . also frees the defendant from the harassment of identical future litigation.'" *Smith v. Behr Process Corp.*, 113 Wn. App. 306, 318, 54 P.3d 665 (2002) (alterations in original) (quoting *Brown v. Brown*, 6 Wn. App. 249, 256-57, 492 P.2d 581 (1971)). "'[A] primary function of the class suit is to provide a procedure for vindicating claims which, taken individually, are too small to justify individual legal action but which are of significant size and importance if taken as a group.'" *Behr*, 113 Wn. App. at 318-19 (alteration in original) (quoting *Brown*, 6 Wn. App. at 253). In close cases, then, we resolve doubts in favor of allowing or maintaining the class. *Sitton v. State Farm Mut. Auto. Ins. Co.*, 116 Wn. App. 245, 250, 63 P.3d 198 (2003).

 ¶38 Under CR 23(b)(3), the trial court must determine that common issues of law or fact predominate over questions affecting individual members and that a class action is the superior method of adjudication. *Sitton*, 116 Wn. App. at 253. In this analysis, we engage in a "'pragmatic inquiry into whether there is a common nucleus of operative facts to each class member's claim.'" *Behr*, 113 Wn. App. at 323 (internal quotation marks omitted) (quoting *Clark v. Bonded Adjustment Co.*, 204 F.R.D. 662, 666 (E.D. Wash. 2002)).

¶39 Questions of judicial economy remain central. *Sitton*, 116 Wn. App. at 255. That class members may have to make individual showings of damages does not preclude class certification. *Behr*, 113 Wn. App. at 323.

¶40 Here, the trial court certified a class under CR 23(b)(3), defining that class as follows:

[A]ll persons who: (1) were insured pursuant to a casualty automobile insurance policy issued by Farmers for the state of Washington; (2) received payment under their collision or comprehensive coverages for damage to an insured automobile from May 30, 1993 to the date of class certification in this action; and (3) did not receive payment for inherent diminished

value where: (a) the repair estimate including supplements totaled at least $1,000, (b) the vehicle was no more than six years old (model year plus five years) and had less than 90,000 miles on it at the time of the accident, and (c) the vehicle suffered structural (frame) damage and/or deformed sheet metal and/or required body or paint work.

Excluded from the class are Defendants; their officers and directors; this Court and any member of the Court's immediate family; and those individuals whose vehicles were leased or total losses.

VI CP at 1582.

¶41 In its analysis, the trial court identified several common issues of law and fact: (1) where the relevant policy language was materially identical, whether the class members' insurance policies covered diminished value; (2) whether "each class member's vehicle suffered a reduction in value as a result of the vehicle['s] having been in an accident without consideration of repair related diminished value"; (3) whether each class member's vehicle could be returned to preaccident condition; and (4) whether Farmers engaged in "a common and systematic course of conduct designed to process physical damage claims so as to avoid acknowledging or paying diminished value claims in first party insurance contracts." VI CP at 1574.

¶42 When determining whether these common issues of fact and law predominated over individual concerns, the trial court analyzed the four factors set forth in CR 23(b)(3)(A)-(D). It identified CR 23(b)(3)(D), the management factor, as a heavily disputed issue and the most significant factor in its examination.

¶43 In conclusion, the trial court determined that "the only conceivable method to adjudicate or resolve this case is through a class action, as the de minimus size of individual claims would leave policyholders without practical recourse, absent class treatment, to address the contract construction (legal) and damages (fact) issues." VI CP at 1579.

¶44 Tenable reasons support the trial court's determination that common issues predominated over individual issues. The trial court identified the common nucleus of operative facts, namely that class members shared the same insurance policy, potentially suffered damage, and were allegedly harmed by Farmers' course of conduct.[13] Because each claim has a de minimus value, individuals are unlikely to pursue separate actions. Even though individual issues may pose management problems for the trial court, this does not preclude certification.[14]

¶45 Nor does it, as Farmers contends, result in an improper shift in the burden of proof. Given the common, overriding issues of law and fact, judicial economy warranted certification.[15] As such, Farmers' argument fails.

---

[13] Farmers cites *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 835 N.E.2d 801, 296 Ill. Dec. 448 (2005), in its cross appeal. In *Avery*, the Illinois Supreme Court reversed in part on class certification. We do not find the *Avery* analysis persuasive, as that matter involved a class with varying insurance contracts in 48 states that could not be given uniform interpretation.

[14] In addition, Farmers argues "that the class certification order was based on *predictions* by Moeller and his experts that proof of a particular type would permit Moeller to establish liability to all class members without any individualized proof." Resp't/Cross-Appellants' Reply Br. at 20. Thus, it claims that it cannot obtain a binding adjudication against all members of the class. Br. of Resp'ts/Cross Appellants at 46. But the trial court determined that Moeller offered an acceptable plan of proof:

Plaintiffs have also presented the Court with a preliminary plan of how to proceed to gather the data on vehicles and how to manage this litigation as a class action. Their plan evidences a keen understanding of the steps necessary to process claims, identify class members, analyze the data on the existence or amount of diminished value, make adjustments to the classwide damages for any defenses raised (and substantiated by Defendants), and then provide for notification and allocation of any damages awarded to the class after trial. Plaintiff's counsel have exhibited an understanding of the sources of data, cross checks on that data, supplemental sources of data, and the use of computers to index and manipulate that data. This will expedite the retrieval, sorting, and analysis of pertinent data for both the Plaintiffs and Defendants.

CP at 1579-80. We see nothing in the record indicating that the trial court abused its discretion on this point.

[15] Farmers also argues that implementation of the certification order results in an impermissible bifurcation: "the supposed classwide finding of liability would have to be reexamined in each claim proceeding, to determine whether that particular class member suffered any injury." Br. of Resp'ts/Cross Appellants at 44-45. The trial court rejected Farmers' injury argument:

¶46 We affirm in part, reverse in part, and remand for further proceedings.

BRIDGEWATER and ARMSTRONG, JJ., concur.

Review granted at 169 Wn.2d 1001 (2010).

After close consideration and scrutiny of the desirability and claimed need to assert individual defenses in each particular case, it is the Court's finding, based on the evidence and argument of counsel, that in the course of identifying the particular class members and in evaluating their particular cases, that the Defendants in this case will be able to present any relevant information to the Court and jury in a classwide trial and that classwide treatment is therefore preferable.

CP at 1578. The trial court acted within its discretion when it determined that classwide treatment both protected Farmers' interests and served the interests of judicial economy.